GILSONITE CONSTRUCTION COMPANY v. ARKANSAS McALESTER COAL COMPANY, Appellant; TWITCHELL et al.

Division Two, June 11, 1907.

1. TAXBILLS: Objections Within Sixty Days: Unconstitutional: Errors in Taxbill. Section 23 of article 9 of the charter of Kansas City, in so far as it requires the owner of a tract of land against which a special taxbill for a street improvement has been issued, to file with the Board of Public Works, within sixty days from the issue of said taxbill, a written statement of all objections which he may have to the validity thereof, and providing that in any suit on any taxbill no objection shall be pleaded or proved other than those that have been filed with the board, is unconstitutional, null and void, in that it deprives such owner of his property without due process of law. And no distinction, in that regard, can be made between objections that go to show that the taxbill is void and objections that go to show that it is irregular and erroneous.

205 Sup—4

2. ———: ———: ———: ———: **Appellate Jurisdiction.** And where plaintiff, in its reply, pleads that section as a complete bar to defendant's defenses, and objects to proof of the various defects and matters of defense relied upon by defendant, the defendant's appeal is to the Supreme Court, since the constitutionality of that section is involved.

3. ———: **Installments: Limitations.** Where the charter provided that "if any installment of any such taxbills, or interest thereon, be not paid when due, then all the remaining installments shall immediately become due and payable," and further provided that "the lien of all taxbills issued under this section shall continue for a period of one year after the last installment specified therein shall become due and payable and no longer, unless within such year suit shall have been instituted to collect such taxbill," the lien of the taxbill does not expire, and the suit is not barred by limitations, if suit is brought on all the installments at any time within one year after the last installment has become due and payable. If the taxbill was payable in four annual installments, and upon default in the payment of any installment or interest all became at once due and payable, suit begun on the taxbill within one year after the last installment became due and payable, is not barred by limitations. [Distinguishing Burnes v. Ballinger, 76 Mo. App. 58, and disapproving that case on this point.]

4. ———: **Changing Material.** There is nothing in the charter of Kansas City which prohibits the Board of Public Works from changing its recommendation, as to the materials to be used in constructing the street pavement, at any time before the Common Council acts upon its recommendation.

5. ———: **Competition: Monopoly.** Where the Board of Public Works designated vitrified brick manufactured by three different companies or "any other vitrified brick equally as good as those designated," as the material to be used in paving the street, it did not thereby shut out full and fair competition, but merely fixed a standard to which bidders would be required to conform, if vitrified brick were selected.

6. ———: ———: ———: **American Bituminous Rock.** Where the board selected "American bituminous rock," and neither of the vitrified bricks mentioned in its recommendation, it merely designated a material, and did not violate the rule requiring free and fair competition in bids.

7. ———: **Regulations: Reference to Files.** A reference in the ordinance to specifications on file with the Board of Public Works is sufficient without incorporating them in the ordinance; and where the ordinance requires the work to be done, out of certain designated material, according to plans and spec-

ifications in "Detail H," approved August 11, 1896, and on file with said board, and "Detail H" was minute in its requirements, it cannot be said that the ordinance failed to prescribe the materials and manner and regulations under which the work was to be done.

8. ——: **Delegating Authority.** The fact that the ordinance stated the spreading, tamping, rolling, sweeping, and compressing the material, etc., was to be done under the direction of the city engineer, and according to plans furnished by him, did not amount to a delegation of legislative authority by the common council to him.

9. ——: **Paving Street Railway.** Where there was no evidence on the point that the ordinance provided for grading the whole street, while the specifications prepared by the engineer required the outside edge of all street railways to be paved with granite or sandstone paving blocks, the court will not undertake to determine whether or not the contract was for that reason void and contradictory.

10. ——: **Selecting Material: Majority of Resident Owners: Sufficiency of Board's Finding.** Where the ordinance provided that "resident owners of the city who own a majority in front feet of the lands belonging to such residents and fronting" on the street to be improved, may within a designated time by petition designate the material to be used, and the board by its record recites that "none of the petitions represent a majority of the resident property-owners on said street," that recital, because of its failure to say that no petition was signed by the owners of the majority of feet fronting on the street, does not render void the selection by the board of the material used. The presumption is that the board proceeded in accordance with the law and not in violation thereof.

11. ——: ——: ——: ——: **Conclusive.** But while the board of public works has the right to determine whether or not the petition designating the material to be used was signed by resident owners of a majority of the front feet, its finding on that point is not conclusive; but its finding is prima facie correct, and can be overcome by showing that the signers were resident owners of a majority of the front feet.

12. ——: ——: ——: **Certified to Council.** The charter of Kansas City does not require the result of the canvass of petitions for material to be used in the construction of a business street, to be certified to the common council.

13. ——: **Time When To Be Completed.** The time within which the work is to be completed should be inserted in the specifications before any bidding is made therefor.

14. ———: **Security.** The fixing of the amount of the security for the performance of the contract upon the basis of the contract, after it is let, is a substantial compliance with the charter.

15. ———: **Defective Pavement: Guaranty.** The taxbills are not void because the evidence shows that there were holes in the pavement, both before and after its acceptance by the city engineer. The guaranty to keep the pavement in repair for five years does not mean that it will endure for five years without repair; it means that the contractor must keep it in good condition for five years without further compensation.

16. ———: **Commencing and Completing Work: Reasonable Time.** The ordinance did not specify the time within which the public work should be begun or completed, but the contract took effect on November 27, and provided that the work should be begun on or before that date and completed in ninety days. It also provided that the work should, after it began, be prosecuted regularly and uninterruptedly, "unless the engineer shall specifically direct otherwise in writing," and fixed a penalty of ten dollars per day for failure to complete the work within ninety days. On November 27 the engineer extended the time for commencing the work "until further notice," and on February 13, extended the time for completing the work until May 1, and on April 29 to June 1. The work was not begun until in April, and not being finished by June 1, the contractor obtained an extension by the city council on June 8 to June 20, and finished the work in July, and no reduction was made in the taxbills by assessing the penalty for failure to complete the work in time. *Held*, first, that the work was not completed within a reasonable time, and the taxbills are void; and, *second*, admitting without deciding that the extension granted by the council was a determination of what constituted reasonable time, the council had no authority, after all the extensions granted by the engineer had expired, to grant further extension of time, neither was the work finished within the time specified by the council.

17. ———: ———: ———: **Extension.** Neither the city council nor the city engineer can extend the time within which a public work is to be completed, after all prior extensions have expired.

18. ———: ———: ———: **Right of Citizen.** The citizen, against whose property a special taxbill has been issued to pay for a street improvement, has the right to ask the court to subject the whole transaction, including the contract and the performance of the work, to a fair and reasonable interpretation. And while the court is not favorably disposed to nullify taxbills predicated upon contracts where the evidence shows that the

contractor in good faith made an honest and reasonable effort to perform the work in accordance with his agreement, yet the right of the property-owner must not be entirely ignored.

19. ———: ———: ———: **Duty of Court.** Where all the facts in reference to the beginning and completion of the work are undisputed, it is a matter of law for the court to determine, by a peremptory instruction, whether or not the work was done within a reasonable time.

20. ———: ———: ———: **Actual Value of Work Done: No Evidence.** Where the contractor did not complete the public work within a reasonable time, and there was no evidence as to the actual value of the work done, the court should refuse an instruction, in the suit on the taxbill, to permit plaintiff to recover that actual value. And the validity of the charter provision allowing such recovery when there is evidence of such actual value, is not determined.

21. ———: ———: ———: ———: **Penalty.** And in any event an instruction on actual value of the work done, which ignores from the final estimate the penalty for failure to complete the work in time, should be refused.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

REVERSED AND REMANDED *(with directions).*

*Milton Moore* and *L. A. Laughlin* for appellant.

(1) The recommendation of the Board of Public Works to the Common Council, made August 11, 1896, is void. St. Louis Q. & C. Co. v. Von Versen, 81 Mo. App. 519; Schoenberg v. Field, 95 Mo. App. 241. (2) Ordinance 7535, providing for the doing of the work, is void. Haezele v. Mallinckrodt, 46 Mo. 577; St. Louis v. Clemens, 43 Mo. 395; Ruggles v. Collier, 43 Mo. 353; St. Louis v. Clemens, 52 Mo. 133; Welty on Assessments, sec. 282, notes 6 and 7; Haag v. Ward, 186 Mo. 325; Dickey v. Holmes, 109 Mo. App. 721; Neill v. Gates, 152 Mo. 594; Police Relief Assn. v. Tierney, 116 Mo. App. 460; Sedalia v. Donohue, 190 Mo. 422; City of Unionville v. Martin, 95 Mo. App. 36; Childers

v. Holmes, 95 Mo. App. 158; Thompson v. City of Boonville, 61 Mo. 282; Rich Hill v. Donnan, 82 Mo. App. 386; Schoenberg v. Field, 95 Mo. App. 247; Ramsey v. Field, 115 Mo. App. 630. (3) The selection by the Board of Public Works of American Bituminous Rock as the paving material was void. Kirksville v. Coleman, 103 Mo. App. 215; West v. Porter, 89 Mo. App. 150; Cole v. Skranika, 105 Mo. 303. (4) The award of the contract was void. Dickey v. Holmes, 109 Mo. App. 721; Kirksville v. Coleman, 103 Mo. App. 215; Kiley v. Oppenheimer, 55 Mo. 374; Leach v. Carzill, 60 Mo. 316; Heidelberg v. St. Francois Co., 100 Mo. 69; City of DeSoto v. Slowman, 100 Mo. App. 323; St. Louis v. Gleason, 89 Mo. 67, 93 Mo. 33; Galbreath v. Newton, 30 Mo. App. 394; Guinotte v. Egelhoff, 64 Mo. App. 366; Pacific Elec. Co. v. Los Angeles, 118 Fed. 753; Mazett v. Pittsburg, 137 Pa. St. 693; Brady v. New York, 20 N. Y. 312; McQuiddy v. Brannock, 70 Mo. App. 535. (5) The acceptance of the work by the city engineer was void. Hill O'Meara Const. Co. v. Hutchinson, 100 Mo. App. 294; Heman v. Larkin, 108 Mo. App. 392; Bank v. Payne, 31 Mo. App. 512; 7 Am. and Eng. Ency. Law (2 Ed.), 120, 121; Hilgert v. Barber Asphalt Pav. Co., 107 Mo. App. 385; Neill v. Gates, 152 Mo. 585; Childers v. Holmes, 95 Mo. App. 155; Barber Asphalt Co. v. Ridge, 169 Mo. 376; Rose v. Trestrail, 62 Mo. App. 352; McQuiddy v. Brannock, 70 Mo. App. 535; Whittemore v. Sills, 76 Mo. App. 248; Safe Deposit Co. v. James, 77 Mo. App. 616; Ayers v. Schmohl, 86 Mo. App. 349; Winfrey v. Linger, 89 Mo. App. 159; Redlands Orange Assn. v. Gorman, 161 Mo. 203; St. Louis Trust Co. v. Tork, 81 Mo. App. 342; Davis v. Smith, 15 Mo. 467; Shouse v. Neiswanger, 18 Mo. App. 236; Hall v. School District, 24 Mo. App. 213; Brinkerhoff v. Elliott, 43 Mo. App. 185; Beatie v. Coal Co., 56 Mo. App. 221; Harrison v. Railroad, 74 Mo. 364; Schaibel v. Merrill, 185 Mo. 534; Hund v.

Rackliffe, 192 Mo. 312; Schoenberg v. Heyer, 91 Mo. App. 389; Barber A. P. Co. v. Munn, 185 Mo. 552. (6) The computation and apportionment of the cost of doing the work are void. Heman v. Gilliam, 171 Mo. 258; Hund v. Rackliffe, 192 Mo. 312; Rich Hill v. Donnan, 82 Mo. App. 386; Sedalia v. Gold, 91 Mo. App. 382; Bank v. Ridge, 62 Mo. App. 324. (7) The lien of the taxbill had expired by limitation. Burnes v. Ballinger, 76 Mo. App. 58.

· *Frank Hagerman* and *Kimbrough Stone* for respondent.

(1) Attitude of courts toward taxbills. Asphalt Pav. Co. v. Ullman, 137 Mo. 568; Haughaumt v. Raymond, 83 Pac. 54. (2) Validity of recommendation of Board of Public Works. Charter of Kansas City, art. 9, sec. 2; Bambrick v. Campbell, 37 Mo. App. 460; Barber Asphalt Pav. Co. v. Field, 188 Mo. 200. (3) Validity of ordinance authorizing the pavement. Charter of Kansas City, art. 9, sec. 2; Sheehan v. Gleeson, 46 Mo. 100; Moran v. Lindell, 52 Mo. 229; Carlin v. Cavender, 56 Mo. 288; Becker v. City, 94 Mo. 380; Asphalt Co. v. Ullman, 137 Mo. 570; Galbreath v. Newton, 30 Mo. App. 392; Roth v. Hax, 68 Mo. App. 287; State v. Mayor, 3 Vroom 49; State v. Morristown, 5 Vroom 445; Stone v. Cambridge, 6 Cush. 270. (4) The selection by the Board of Public Works of American bituminous rock as the paving material, was valid. · Charter of Kansas City, 1898, art. 9, secs. 2, 22; Asphalt Pav. Co. v. Ullman, 137 Mo. 568. (5) The specifications were not incomplete at time of advertisement for bids. Revised Ordinances 1898, secs. 811, 815. (6) Acceptance of work by city engineer. Steffen v. Fry, 124 Mo. 630; Charter of Kansas City, art. 9, sec. 18; Asphalt Pav. Co. v. Ullman, 137 Mo. 543; Heman v. Gilliam, 171 Mo. 271; Schibel v. Merrill, 185 Mo. 547; Allen v. Labsap, 188 Mo. 696; Paving Co.

v. Munn, 185 Mo. 570; Carlin v. Cavender, 56 Mo. 286; Smith v. Westport, 105 Mo. App. 226. (7) The computation and apportionment of the cost were valid. Kefferstein v. Knox, 56 Mo. 189; Nash v. Craig, 134 Mo. 358; Heman v. Loevy, 179 Mo. 455; Nevada v. Morris, 43 Mo. App. 586. (8) The lien of the tax-bill had not expired by limitation. Charter of Kansas City, art. 9, sec. 23; Ross v. Gates, 183 Mo. 349; Ross v. Gates, 117 Mo. App. 236. (9) Constitutional question. Charter of Kansas City, art. 9, sec. 23; Sheehan v. Owen, 82 Mo. 465; St. Louis v. Marchel, 99 Mo. 475; Saxton Bank v. Carswell, 126 Mo. 426; State v. Springer, 134 Mo. 224; Kansas City v. Kimball, 60 Kan. 224; Kansas City v. Gray, 62 Kan. 198; Doran v. Barnes, 54 Kan. 238; Kansas City v. Ins. Co., 10 Kan. App. 578; Kansas City v. Mowbray, 10 Kan. App. 578; Wahlgren v. Kansas City, 42 Kan. 243; McMillen v. Anderson, 95 U. S. 37; Pennoyer v. Neff, 95 U. S. 714; Davidson v. Board, 96 U. S. 97; Winona Land Co. v. Minn, 159 U. S. 537; Seminary v. Tacoma, 62 Pac. 444; King v. Portland, 63 Pac. 4; Cunningham v. Denver, 23 Colo. 18; People v. Turner, 40 N. E. 400; Shalley v. Railroad, 64 Conn. 381; Oskamp v. Lewis, 103 Fed. 906; Quill v. Indianapolis, 124 Ind. 292; Villiage v. Norton, 65 N. W. 935.

GANTT, J.—This is an appeal from the judgment of the circuit court of Jackson county granting a new trial after finding a judgment for the defendants. The suit was to establish and enforce the lien of a special taxbill issued by Kansas City for the paving of Nineteenth street, a business street in said city, with American bituminous rock mixed with asphalt, from Main street to Tracy avenue. The taxbill was issued on what is known in said city, under its special charter, as the installment plan, and was payable in four equal installments of one hundred, sixty-three dollars and

sixty-seven and one-half cents each, the last install-
ment falling due on May 31, 1901. The bills bear in-
terest at the rate of seven per cent per annum, and
provided that if any installment or interest thereon
was not paid when due, then all the remaining install-
ments should become due and collectible with interest
thereon at the rate of ten per cent per annum from
the date of the issue of said taxbill. Said taxbill was
issued August 20, 1897. The petition is in the usual
form, alleging the incorporation of the Gilson As-
phaltum Company under the laws of this State, and
incorporation of the plaintiff under the laws of this
State, and alleged that the work for which said bill was
issued was done under an ordinance of Kansas City
numbered 7535, and that all of said installments were
due and unpaid, and that there was due from the de-
fendants six hundred and fifty-four dollars and seventy
cents, which was chargeable against lot one, block four
Vineyard's Addition to Kansas City, and prayed judg-
ment for the said sum and for its enforcement against
said property and for costs.

The answer admitted that Kansas City was a
municipal corporation duly created under the laws of
this State, and admitted their ownership of the said
real estate, but denied each and every other allegation
in the said petition contained. And then for special
defense alleged that the said ordinance under which
said work was done was null and void, because the
materials for the said paving designated in said ordi-
nance were specifically required to be furnished by
certain companies or corporations or from certain
localities, thereby preventing full and fair competition.
And because no time for the completion of said work
was prescribed in said ordinance, and no plans or
specifications for said work were in existence at or
before the passage and approval of the said ordinance.
The answer also alleged that the work was based on an

alleged recommendation by the Board of Public Works
of said city to the Common Council on August 11, 1896,
and that said recommendation was illegal and void
because a previous and different recommendation had
been made by said board July 3, 1896, and never re-
scinded, and because the said recommendation desig-
nated materials which were required to be furnished
by certain companies or corporations or from certain
localities, thereby preventing full and fair competi-
tion. It is further alleged in the answer that after the
passage and publication of said ordinance, which al-
lowed resident property-owners to select the materials
out of which said pavement was to be constructed, two
petitions of resident property-owners were filed with
said Board of Public Works on September 22, 1896,
and that said petitions were both rejected by the said
board, because neither petition represented a majority
of the resident property-owners on said street, and
thereupon the said board selected American bitumin-
ous rock on concrete to be laid according to "Detail
H" of asphalt pavement, approved by said board Au-
gust 11, 1896, and on file in the office of said board
as the material with which said street should be paved
under said ordinance, and that such selection by said
board was null and void because the resident owners
of the city owning a majority in front feet of the lands
belonging to such residents and fronting on said street
had petitioned for the selection of Trinidad Lake as-
phalt. And the finding of said board that a majority
of the resident owners had not made a selection was
not in conformity with the requirements of section 2
of article 9 of the city charter, and because the result
of such canvass was not certified to the Common
Council as required by section 22 of article 9 of the
city charter, and for a further reason that the mater-
ials required to be used in making said pavement ac-
cording to "Detail H" and selected by said board were

articles of common use, widely and abundantly pro-
duced, but were required to be furnished from certain
designated localities, the output of which at that time
was controlled exclusively in said city by the Gilson
Asphaltum Company, all of which prevented full and
fair competition. Another defense was that the amount
of security to be given by the contractor was not pre-
scribed by any plans or specifications, or otherwise,
before advertising for bids as required by section 811
of the ordinances of Kansas City of 1898. The answer
then proceeds to allege that only one bid was received,
which was from the Gilson Asphaltum Company, and
the contract was awarded to said company; that the
contract was entered into between said company and
the City Engineer, which was confirmed by an ordi-
nance number 7883, November 14, 1896; that said
contract was void for the reason that it was con-
tradictory and uncertain inasmuch as it provided that
said street should be paved except the spaces required
to be paved by the street railway companies operating
street railways along and across said Nineteenth street
and provided that the contractor should lay along the
outside edge of all street railways a line of granite
or sandstone blocks; that at said time the said street
railways companies were under obligations to the said
city to pave said street for the space of eighteen inches
outside of their tracks, and that said granite or sand-
stone blocks were laid in the space required to be
paved by said companies and the cost thereof was
included in the total cost of said work. It was also
alleged that by the said contract said work was to
be done according to said "Detail H" and should be
constructed in such a manner that the same should
endure without the need of any repairs for a period
of five years, from and after the completion and ac-
ceptance of the same. That by said contract it was
further provided that the said paving should be begun

within ten days after said contract took effect and should be prosecuted regularly and uninterruptedly with such force as to secure its completion within ninety days, the time of beginning, rate of progress and time of completion being essential conditions of said contract, and if the contractor fail to complete the work within the time specified, ten dollars per day for each and every day thereafter until such completion should be deducted as liquidated damages from the final estimate of said work. That on November 27, 1896, the City Engineer without authority by indorsement on said contract suspended the time for commencing thereunder until further notice from his office, owing to the lateness of the season and unsuitable weather for laying concrete. That on February 13, 1897, said engineer without authority extended the time for the completion of said work until June 1, 1897. That Kansas City without authority by ordinance 8441, approved June 8, 1897, extended the time for the completion of said work to June 20, 1897, and the work was accepted by the City Engineer, July 17, 1897, that the acceptance by the City Engineer was fraudulent, illegal and void, because the said work did not conform to the said contract and the pavement was not of such quality that it would endure for five years without repairs, and because the said work was not begun within ten days after the contract was confirmed, and was not regularly prosecuted and its completion secured within ninety days, and because the extensions of time were without authority of law and the reasons given therefor were untrue in fact, and because the City Engineer did not compute and apportion the cost thereof, and because the apportionment certified to the City Treasurer did not contain the names of the property-owners at the time of the acceptance of the work, and because the penalty of ten dollars per day was not deducted from the cost of

doing said work. The answer further alleges that the taxbill was illegal and void because the name of the president of the Board of Public Works was not signed by him or any one authorized to do so, and finally the Statute of Limitations was pleaded against the said bill.

The plaintiff in its reply denied all the new matter set up in the answer and pleaded that the defendants were fully advised of all the steps and proceedings for the laying of the said pavement and consented to the work and made no objection and are estopped from contesting the said taxbills, and for a special plea alleges that the defendants and their privies under whom they claim did not within sixty days from the date of the issue of the taxbill sued on file a written statement of any objections to the validity of said taxbills, and have, therefore, waived all objections thereto and are estopped to raise any objections at this time.

The cause was tried to a jury and after a hearing of all the testimony the court sustained a demurrer to the evidence and rendered judgment for the defendants, and thereafter within four days the plaintiff filed its motion for a new trial, which the court sustained on the ground that the court had erred in peremptorily instructing the jury to find for the defendants on each count of the petition and from this action of the court, the defendant, the Arkansas McAlester Coal Company, appeals to this court.

I. This appeal has been properly certified to this court because the constitutionality of section 23 of article 9 of the charter of Kansas City, 1889, is directly involved in its determination. The plaintiff in its reply pleaded said section as a complete bar to all the defenses set up by the defendants in their answer. Moreover, the plaintiff objected to the proof of the various defects and matters of defense relied upon by the defendant and the court overruled said objections

on the ground that said charter provision was unconstitutional and the constitutionality of said section is directly assailed by the defendants.

This case was tried before a jury in November, 1903, and prior to that date this court in two decisions, to-wit, Paving Company v. Ridge, 169 Mo. 376, and State ex rel. v. Smith, 177 Mo. 69, had held the said section 23 of article 9 of the charter of Kansas City, in so far as it required the owner or owners of any tract or parcel of real estate, or of any interest in such tract or parcel of real estate, against which the special taxbill had issued, within sixty days from the date of issue of such taxbill, to file with the Board of Public Works a written statement of each and all objections which he or they might have to the validity of such taxbills, the doing of the work, the furnishing of the materials charged for, the sufficiency of the work or the material therein used, and any mistake or error in the amount thereof, and providing that in any suit on any taxbill issued pursuant to said section no objection or objections should be pleaded or proved other than those that had been filed with the Board of Public Works within the period aforesaid, was unconstitutional, null and void, in that it deprives all such owners of abutting real estate of their property without due process of law. But the learned counsel for the plaintiff in this case asks a reconsideration in so far as the defenses are technical and that a distinction should be made between objections which go to show that the taxbill is void, and those which go only to show that it is irregular or erroneous. This exact question was before this court in State ex rel. v. Smith, 177 Mo. 69, and this court In Banc ruled that there was no foundation for such distinction under this charter provision, for that provision expressly applies to objections which go to, first, the validity of the taxbills; second, to the doing of the work; third,

to the materials furnished; fourth, to the sufficiency of the work or materials used; fifth, to any mistake or error in the amount. We have carefully considered the argument of the learned counsel for a review of our decisions on this proposition and can see no reason whatever for departing from the judgment in those cases, and they must be held to have settled the law in this State on this subject. [Paving Co. v. Munn, 185 Mo. 565, 566.]

II.   The lien of the taxbill, if valid, had not expired by limitation when this action was brought. The contention that it was barred is based upon the provision of the charter, section 23 of article 9, that, "if any installment of any such taxbills, ·or interest thereon, be not paid when due, then all the remaining installments shall immediately become due and payable." But counsel overlooks the fact that the same charter provision provides, "The lien of all taxbills issued under this section shall continue for a period of one year after the last installments specified therein shall have become due and payable and no longer, unless within such year suit shall have been instituted to collect such taxbill," etc. The provision that if any installments shall not be paid when due then all the remaining installments should immediately become due and collectible, was for the benefit of the holder of the taxbill; it was a privilege given him authorizing him to sue and collect, but it did not have the effect of shortening the period during which the lien should continue. [Ross v. Gates, 183 Mo. 338; Ibid v. Ibid, 117 Mo. App. 236.] The counsel for the defendants relies upon Burnes v. Ballinger, 76 Mo. App. 58. The opinion in that case was a construction of section 1405, Revised Statutes 1889, the provisions of which are very similar to those found in section 23 of article 9 of the charter of Kansas City. The Kansas City Court of Appeals held that the said provision in charters of

cities of the second class should be interpreted as though it read "such special taxbills as may have been defaulted shall become then and there due and payable," and with this conclusion we entirely concur, but the court further held in that case that it was not optional with the holder of the bill whether he would consider it to be due on default of interest in so far as would affect defendant's rights; that the words of the statute that "if default is made in the payment of interest due on either of said days, then the principal and interest due on such special taxbills shall become then and there due and payable, and may be collected as provided in section 1407," were mandatory, and that the statute began to run upon the default of the interest to the whole of the said installment or installments upon which such default had been made. The court fortifies its opinion with those of other courts in which provisions in mortgages and contracts providing that when a series of notes or installments should become due and payable, upon the failure to pay either when payable, were held to put the Statute of Limitations in operation upon the default of any one thereof. That these authorities on this class of cases supported the Court of Appeals there can be no question, but in neither of the cases referred to was there a similar provision to that found in section 23 of article 9 expressly providing that the lien should continue for a definite period after the last installment specified therein should become due and payable, that is, according to the terms of the instrument itself. Reference is made by this court to this part of said section expressly providing for the continuance of the lien in Ross v. Gates, 183 Mo. 338. The learned counsel for the defendant did not cite Burnes v. Ballinger, supra, and it evidently was not called to the attention of this court when it was considering that case, but it is obvious that this court held

that the lien continued one year after the last install-
ment fell due, and we think that is a proper construc-
tion of the said charter provision. Afterwards, in
Ross v. Gates, 117 Mo. App. 236, the facts in that case
clearly called for a decision of this question because
the last installment of the taxbill therein sued upon
was due on the 31st of May, 1900, and it was held that
a suit brought on the 28th of May, 1901, was brought
within the time allowed by the charter. It must be
held that Burnes v. Ballinger, in so far as it holds that
a lien is barred or lost if the action is not brought
within one year after default in the first installment
or interest thereon, is in conflict with Ross v. Gates,
183 Mo. l. c. 349, and Ross v. Gates, 117 Mo. App.
237, and is not a correct construction of said charter
provision to that extent.

III. It is insisted that the recommendation of
the Board of Public Works to the Common Council
made August 11, 1896, is void for two reasons: first,
that the board had on July 3, 1896, made a recommen-
dation for paving this same street with different ma-
terials, and this action had never been rescinded; and,
second, that the recommendation of August 11, 1896,
designates the vitrified brick as manufactured by the
Diamond Brick & Tile Company, and vitrified brick
as manufactured by the Kansas City Vitrified Brick
Company, and by the Pittsburg, Kansas, Vitrified
Brick Company, as material to be used.

As to the first objection to the recommendation,
we think it is without substantial basis. The object
of this provision of the charter was to secure to the
public and the property-owners affected by the im-
provement, the benefit of the skill and unbiased judg-
ment of scientific men removed from local influence.
Section 2 of article 9 of the charter of Kansas City

of 1889 provides that the Common Council shall have power to cause to be paved and repaved the streets of said city, provided, however, that no such resolution or ordinance for paving or repaving such street shall be passed by the Common Council except upon recommendation of the Board of Public Works indorsed thereon. There is nothing in the charter which prohibits the Board of Public Works from changing its recommendation as to the materials out of which the pavement is to be constructed at any time before the Common Council acts upon its recommendation, and as in this case it is conceded that the Board of Public Works on the 11th of August, 1896, made another and different recommendation from that which it had made on July 3, 1896, and that the Common Council accepted the recommendation of August 11, 1896, and that recommendation was indorsed upon the ordinance which the Common Council afterwards passed on August 21, 1896, and which was approved by the Mayor August 27, 1896, it is obvious that the first recommendation was considered by the council as revoked; at any rate, the last recommendation became effective when the council adopted it. There is nothing in the charter which countenances the contention that the power of the Board of Public Works to make a recommendation was exhausted when it made the first recommendation. Certainly not, if made prior to the time the council acted upon such recommendation.

As to the second ground of objection to the said recommendation. Under section 2 of article 9 of the charter, it is incumbent upon the Board of Public Works to designate not less than two kinds of material which in their judgment would be suitable for the pavement, and in the absence of a selection by the resident owners of the city who owned a majority in front feet of all the land belonging to such residents fronting on the street to be improved, the board shall

designate the material with which said street shall be improved. In its answer the defendant alleges that the recommendation in this case was void, "because many of the materials designated therein were specifically required to be furnished by certain companies or corporations or from certain localities, thereby preventing full and fair competition," and the ordinance is assailed for the same reason. In its brief, as already seen, the defendant assails the recommendation because it designated vitrified brick as manufactured by the Diamond Brick & Tile Company, and vitrified brick as manufactured by the Kansas City Vitrified Brick Company, and vitrified brick as manufactured by the Pittsburg, Kansas, Vitrified Brick Company. By reference to the recommendation itself, it will be observed that the board designated six different materials from which the selection was to be made, and while it designated vitrified brick manufactured by the Diamond Brick & Tile Company and the Kansas City Vitrified Brick Company and Pittsburg Vitrified Brick Company, it adds "or any other vitrified brick equally as good as those designated," and this is true also as to the asphalt. While it names Trinidad Lake and other asphalts it added "any other asphalt equally as good as those designated." We think the recommendation itself is the best answer to this contention of the defendant. We think the recommendation in naming the certain specific vitrified brick when it added "or any other vitrified brick equally as good as those designated," merely adopted a standard to which bidders should conform if vitrified brick was selected as the material out of which the pavement should be made, and that it in no manner prevented full and fair competition and that the objection to the recommendation and the ordinance for this reason is without merit. The Board of Public Works selected American bituminous rock and neither of the vitrified brick mentioned.

In adopting American bituminous rock it merely designated a material and did not violate the rule announced in Shoenberg v. Field, 95 Mo. App. 241, or Swift v. St. Louis, 180 Mo. 95, 96, or Curtice v. Schmidt, 202 Mo. 703. [Swift v. St. Louis, 180 Mo. 80.]

It is also alleged against the ordinance that it failed to prescribe in many respects the materials and the manner and regulations under which the work was to be done, in violation of section 2 of article 9 of the charter. As already said, the ordinance follows the language of the recommendation in the designation of the materials, and as to that it is sufficient. In section 4 of the ordinance, it is provided after specifying the principal material out of which the pavement should be constructed that it should be "laid on concrete according to 'Detail H,' of asphalt pavement approved by the board August 11, 1896, then on file in the office of the said board; that the said work should be done in the best manner, under the direction of the City Engineer, and should conform to the details of the work referred to and designated in section 3 of the ordinance and to such plans and specifications explanatory of the work and not inconsistent with the requirements of the ordinance as the engineer may prepare in respect to such work." The record affirmatively shows that the Board of Public Works had approved on the 11th of August, 1896, the specifications known as "Detail H" and that "Detail H" was on file in the office of the board and open to the examination of all the bidders for this character of work before the ordinance in this case was enacted, and it has often been held that a reference thereto was sufficient without incorporating it into the body of the ordinance. [Becker v. City, 94 Mo. 375; Galbreath v. Newton, 30 Mo. App. l. c. 392; Asphalt Paving Company v. Ullman, 137 Mo. 543.] "Detail H" minutely describes the manner in which the pavement is to be laid, the

composition and dimensions of both the concrete base
and the asphalt wearing surface, the manner of spread-
ing, tamping, rolling, sweeping and compressing the
same, and we think was amply sufficient to comply with
the charter provision. The fact that it was all to
be done under the direction of the City Engineer did
not amount to a delegation of the authority of the
Common Council to the City Engineer.

As to the remaining objection, to-wit, that it pro-
vided for paving the whole street, whereas the speci-
fications prepared by the engineer required the out-
side edge of all street railway tracks to be paved with
granite or sandstone paving blocks, and there was a
street railway track along the entire length of the
street, it is sufficient to say there was no evidence what-
ever on this point, and it is now raised for the first
time on this appeal. No such proposition was pre-
sented to the trial court and of course it cannot be
considered by this court.

IV. The selection by the Board of Public Works
of American bituminous rock as the paving material
out of which said pavement was to be constructed, is
assailed by the defendants on two grounds. The first
is that the board had two petitions presented to it by
the property-owners along said street, acting under
the authority of section 2 of article 9 of the charter,
which provides for the selection of paving material
for a business street. By that section if the Board
of Public Works shall unanimously recommend to the
Common Council that any business street be paved
and the pavement therefor be paid by special taxbills,
and the Common Council shall by ordinance order
such work to be done, such work may be done
without any resolution and regardless of any remon-
strance by the owners of abutting property. The Board
of Public Works in such case is required to recommend
at least two kinds of materials for the making of

such pavement, and after the council authorizes the
work and the ordinance is published embodying the
materials suggested by the board, the resident owners
of the city who own a majority in front feet of the
lands belonging to such residents and fronting on such
street, shall have the right to select the material with
which such street shall be paved from the materials
designated by the Board of Public Works, such selec-
tion to be made within ten days after the ordinance
has been published, such selection to be by petition in
writing addressed and delivered to the Board of Pub-
lic Works, and if no such selection is made within the
time, then the board shall designate the material. It
is alleged in the answer that a majority of the resident
owners in front feet of the lands belonging to such
residents and fronting on said street had petitioned
the board for the selection of Trinidad Lake asphalt,
but that the board canvassed said petitions on Octo-
ber 13, 1896, and made the findings that neither peti-
tion represented a majority of the resident property-
owners on said street, and it is insisted now that the
omission of the board from its minutes of the result
of said canvass of the words ''of the city who own
a majority in front feet of the lands belonging to such
residents and fronting thereon,'' renders the board's
selection utterly void, and that its finding ''that none
of the petitions represented a majority of the resident
property-owners on said street'' was wholly insuffi-
cient. The full minute of the board is in these words:
''Member Youmans offered the following motion,
which was carried, that after a careful canvass of
all the petitions for paving Nineteenth street from
Main street to Tracy avenue, to be paved as a busi-
ness street under ordinance number 7535, it appears
that none of the petitions represented a majority of
the resident property-owners on said street, and no

selection having been made, that the board proceed
to select the material for paving the street."

Conceding that the Board of Public Works is a
public body and by necessary implication, from other
provisions of the charter, it is required to keep a
record of its proceedings, it does not follow that every
motion made by a member of that board should use
the exact language of the charter when it proceeds
under its charter powers to make a selection of ma-
terial for pavement under section 2 of article 9. The
ultimate fact at which the movant was seeking to ar-
rive was the fact that no selection had been made by
the property-owners on said street as allowed by said
section of the charter. Upon that board was devolved
the duty of examining and canvassing the petitions for
material, and it was their duty and within their powers
to determine whether a majority of the resident own-
ers of the city owning a majority in front feet of the
lands fronting on said street had petitioned for a
specific material. The board found that no such selec-
tion had been made, and thereupon proceeded to desig-
nate the material themselves. In considering the ac-
tion of the board the presumption is that they proceeded
in accordance with the law and not in violation there-
of. [Asphalt Paving Company v. Ullman, 137 Mo.
543.] In our opinion the record was substantially suffi-
cient to show the condition precedent which author-
ized the board to designate the material. In our opin-
ion, however, it would be going too far to hold that
this finding of the board was absolutely conclusive. The
defendants alleged in their answer that the resident
owners of the city who owned a majority in front feet of
the lands belonging to the residents and fronting on
said street petitioned for Trinidad Lake asphalt, and
the circuit court permitted the defendants to introduce
the petitions which were on file in the office of the
Board of Public Works and stamped as files therein.

There was no effort made to prove that the petitioners on said petition for Trinidad asphalt were resident property-owners owning property at that time fronting on said street, or that they owned a majority of said property, nor are those petitions incorporated in the record sent to this court, but in lieu thereof we find this statement in the record: "These petitions are omitted herefrom because they have no bearing on any point to be presented to the appellate court on this appeal," signed by the defendant's attorney. In view of this showing we hold that the prima-facie case made by the record that no selection had been made by the property-owners was sufficient and that the board had authority to make the selection.

It is next objected that the result of the canvass of the petitions was not certified to the Common Council as required by the charter. This objection is based upon section 22 of article 9. The paving done in this case was done under section 2 of article 9. The result of the canvass of petitions referred to in section 22, article 9, was required to be certified for the purpose of controlling the action of the Common Council in passing an ordinance authorizing the work. Whereas under section 2, which provides for the paving of business streets, no remonstrance is allowed and the only petition provided for is one directed to the board after the ordinance authorizing the work has been passed and is not required to be sent to the council, the only further action of the council in such case being to confirm the contract as finally made by an ordinance to that effect as was done in this case. We think this second objection is also untenable.

V. Defendants insist that the award of the contract was void because no specifications had been made by the City Engineer, and no time had been prescribed in which the work should be finished, and the amount of security to be given by the contractor had not been

fixed at the time the City Engineer advertised for bids. It is confidently asserted by counsel for the defendant that no specifications had been made by the City Engineer prior to the awarding of the contract and advertisement for bids, this is based upon the testimony of a witness Maloney, who was not at that time in the employ of the City Engineer and who it appears from his cross-examination had never examined these proceedings until probably a year before the trial of this cause, and he testified that the plans were on file before the ordinance was passed, but that there were no specific specifications until about four days prior to the opening of the bids; whereas Mr. Harper, the chief draftsman in the engineer's office, testified that the specifications were made just as soon as the ordinance was passed, and that the general specifications and the details had all been prepared previous to that time, except of course the amount of the security, which was regulated by the amount of the bid. He testified further that at the time the notice to contractors began to be published in the city papers, these plans and specifications had been made and were there on the desk in the office for contractors to examine. The ordinance, section 990 of the Revised Ordinances, provides that when any ordinance shall provide for the doing of any work mentioned in the second section of article 9 of the charter, the City Engineer shall, as soon as practical thereafter, make out the necessary plans and specifications, which shall, in cases where the contract must be let to the lowest bidder, prescribe the time within which the work shall be finished, and the amount of security to be given. Maloney testified that the time within which the work was to be completed was put into the specifications as soon as they were prepared, but that the amount of security to be given by the contractor was not inserted in the contract until after the work was let. Both

he and Mr. Harper testified that the amount of security was filled after the contract was awarded and at the time the bond was made, that the universal custom of the office was to require the amount of security to be equal to the total cost of the work. We think it is clear that the time within which the work was to be completed was inserted in the specifications before any bidding was made upon the contract, and that the fixing of the amount of the security upon the basis of the contract after it was let was a substantial compliance with the charter. The evidence of Maloney, however, as to all of these matters, according to his own statement, was largely if not entirely hearsay, and ought to carry very little weight.

VI. It is next insisted that the acceptance of the work by the City Engineer was void, for different reasons. First, that the pavement was not of such quality that it would endure for five years from and after the completion of the work without the need of any repairs. Section 5 of the ordinance under which this work was done provides that "the work herein authorized shall be executed with a guarantee that the said pavement shall be constructed with such materials and in such a manner that the same shall endure without the need of any repairs for a period of five years after the completion and acceptance of the same without further compensation than that provided for in the contract for the first cost of such work, and for which the said special taxbills are issued." And the contract contains a similar provision. The evidence quite clearly showed that there were holes in the paving, both before and after it was finished; it also showed that the contractor relaid and repaired two or three of the blocks after the pavement was put down. A guaranty of this character has been upheld by this court in Asphalt Paving Company v. Ullman, 137 Mo. 543; Seaboard National Bank v. Woesten,

176 Mo. l. c. 59, and cases there cited. The guaranty being good it does not mean that the pavement shall endure without any need of repairs for five years, but that it shall endure for that period without further compensation than that provided for in the contract for the first cost of such work; in a word, it bound the contractor to repair the pavement from time to time and keep it in repair for five years without further compensation therefor. While the evidence shows there were holes in it, it also showed that it had been repaired, and had given good satisfaction as a street.

Second, the power of the engineer to accept the work is challenged on the ground that the work was not begun nor completed within the time fixed by the contract, nor was it regularly prosecuted after it was begun. The contract for doing this work was approved by ordinance 7833, November 17, 1896. The contract provided that the work should be begun within ten days after the contract became binding and took effect. When the ordinance was passed November 17, 1896, the contract became binding and under its terms work should have begun on or prior to November 27, 1896. It is conceded by all parties that the work was not begun until sometime in April, 1897. This was testified to by both Mr. Selden, a witness for the plaintiff, and Mr. Wise, the City Engineer, who testified for the plaintiff. As a reason for not commencing the work according to the contract the following indorsement on the contract, dated November 27, 1896, was offered in evidence: "The time for commencing work under this contract is suspended until further notice from this office, owing to the lateness of the season and unsuitable weather for laying cement. November 27, 1896. Henry A. Wise, City Engineer." Another indorsement on the contract, dated February 13, 1897, is as follows: "Time for the completion of this work is hereby extended until May 1, 1897, for the reason

that the weather is still unsuitable for doing concrete work. H. A. Wise, City Engineer." This indorsement was shown to Mr. Wise and he identified it as his signature, and he was asked whether at the time he made that indorsement, February 13, 1897, the contractor had done any work between the time of the first indorsement, November 27, and this date, February 13, 1897, and he answered, "I think no work had been done at all in the interim." Again this same witness for the plaintiff was asked this question: "On April 29, 1897, there is another indorsement further extending the time until June, and for the same reason. Now, between the time of November 17, and April 29, 1897, had there been any work done under this contract?" And he answered, "I think not." Q. "There was no work done from the time of the first indorsement, November 27, 1896, up to April 29, 1897." Ans. "No, sir." The stipulation in the contract under which the engineer assumed the authority to extend the beginning and completion of this contract is as follows: "The work embraced in this contract shall be begun within ten days after this contract binds and takes effect, and shall be prosecuted regularly and uninterruptedly thereafter, unless the engineer shall specially direct otherwise in writing, with such force as to secure its full completion within ninety days from the date of its confirmation; the time of beginning, rate of progress and time of completion being essential conditions of the contract. If the contractor shall fail to complete the work within the time above specified, an amount equal to the sum of ten dollars per day for each and every day thereafter, until such completion, shall be deducted as liquidated damages for such breach of this contract from the amount of the final estimate of said work." And another clause in the contract provides, "No allowance will be made for additional time for the completion of this contract

unless the contractor shall be delayed or restrained from prosecuting the work or any and every part thereof, or unless the time is extended by written order of the engineer and then only for the number of days stated in such order." Ordinance 7535 of Kansas City for paving the street in question did not specify a time for commencing or doing the work; the requirements in that regard are to be found in the provisions of the contract above set out. The law governing the rights of a contractor and the property-owners to be charged with special taxbills, was carefully reviewed by this court in Heman v. Gilliam, 171 Mo. 258, the various decisions of this court and the Courts of Appeal on this subject were reviewed, and the distinction drawn between those cases in which the time for the completion of such work was fixed by an ordinance and those cases in which in the absence of an ordinance the contract for the work specified the time within which the work should be done without any qualifying clause, and the contract in Heman v. Gilliam, which provided a time within which the work should be done, qualified by a clause that, "if the contractor should fail to complete the work by the time specified, the sum of five dollars per day for the first ten days and ten dollars per day for each and every day thereafter, until such completion, should be deducted from the moneys payable under the contract." It was held in that case that if the work was completed within a reasonable time the taxbills were not void. In Schibel v. Merrill, 185 Mo. l. c. 547, Fox, J., speaking of Heman v. Gilliam, said: "While the terms of the contract before us vary somewhat from those in the case of Heman v. Gilliam, 171 Mo. 258, they are substantially the same; at least, the difference in the terms would not require the application of a different rule of interpretation of the contract as to the time in which the work could be completed, than the one applied in the

case cited. It will also be noted that the ordinance authorizing or confirming the contract for this work did not expressly designate or specify the time in which the work was to be completed. The principles to be deduced from an analysis of the case of Heman v. Gilliam, supra, applicable to the interpretation of this contract, may briefly be thus stated: A contract for the performance of work in the way of street improvement of a city, first specifying a definite time for the completion of the work, then followed by a penalty clause for failure to complete it within the time designated, in the absence of a requirement by an ordinance of the city that the work shall be completed within a definite time, may be complied with by the performance and completion of the work within a reasonable time. In other words, time is not the essence of a contract in that form, in the absence of an ordinance fixing a definite time for the completion of the work in pursuance of the contract." And in Allen v. Labsap, 188 Mo. l. c. 696, LAMM, J., gave the same interpretation to Heman v. Gilliam, and accordingly the doctrine announced therein must be regarded as settled. Accepting the decisions last quoted as authoritative and applying them to the conceded facts of this case, was the work completed within a reasonable time? Admitting that under one clause of the contract, the engineer could specially stop the work by so directing in writing, and that he did so in time to prevent a forfeiture to the contract by indorsing a suspension of the work on November 27, 1896, the last day limited for commencing the work, when he made his indorsement on the contract on February 13, 1897, he limited the time for the completion of the work to May 1, 1897. The City Engineer, Mr. Wise, was plaintiff's witness, and he testified that the work was not only not completed on the 29th of April, 1897, but that nothing whatever had been done under the contract,

that no work had been done from November 27 up to
and including April 29. It is true one of plaintiff's
witnesses testified that the work was begun in the
latter part of April, but if so it must have been begun
on the last day of April, 1897. It will be noted that
in the extension granted on February 13, 1897, the en-
gineer drew a distinction between his prior order of
November 27, 1896, suspending the time for commenc-
ing the work, and the permission he was granting on
February 13, 1897, for completing it. Nothing having
been done on April 29, another indulgence was granted
the contractor and the time for completion was ex-
tended to June 1. Now the uncontradicted testimony
of both plaintiff and defendant is that the work was
not completed on June 1, nor until sometime in July;
the patience of the engineer apparently having been ex-
hausted, he granted no further extension, and there-
upon the contractor applied to the Common Council
for relief and the Common Council did, on the 8th
of June, 1897, pass an ordinance extending the time
for the completion of the work until June 20, 1897,
but this ordinance was passed after the expiration of
the time limited by the express provisions of the con-
tract, and after all the extensions granted by the City
Engineer had expired, and this court has ruled in
Neill v. Gates, 152 Mo. l. c. 592, and Hund v. Rackliffe,
192 Mo. l. c. 324, 325, that it is not within the power
of the municipal corporation to extend the time by
ordinance for the completion of work after the time for
completing it has expired; but if it should be said
that the last two cases should be limited to cases in
which the time was specified by ordinance, and that
when the Common Council granted this last extension
on June 8, it was a legitimate determination of what
constituted a reasonable time, the plaintiff is still con-
fronted with the fact that the contractor did not com-
plete the work within the time fixed by the ordinance

of June 8, 1897, to-wit, by June 20, 1897, but only finished the work sometime in July. As was said in Schibel v. Merrill, 185 Mo. 1. c. 549: "After the expiration of time, as specified in the contract, we find that an ordinance is procured from the city council extending the time, not to exceed twenty days; yet, with this extension, we have, as shown by the record, a preponderance of evidence that the work was not completed within the time of the extension. Added to this, it may be said that the record is silent upon the question as to any attention whatever being given to the penalty clause of the contract, in the issuance of the special taxbills sought to be annulled in this proceeding." All of which is equally applicable to the case in hand. In addition to this, as bearing upon the reasonableness of the time upon which this contract should have been completed, the testimony of the City Engineer, the plaintiff's own witness, was that as a matter of fact, the weather was suitable for laying concrete during the month of December, 1896, but neither the engineer nor the contractor made any honest endeavor to begin the work and lay the substratum of the pavement and thus expedite the completion of the work in the spring. There is nothing in this record to show that the original time limit of ninety days fixed by the contract was unreasonably short, nor that the city engineer can be charged with any oppressive conduct in his extensions of the time up to June 1, 1897; on the contrary, it appears that he was at all times consulting the convenience of the contractor. While as said in Schibel v. Merrill, supra, and many other decisions of this court, this court is not favorably disposed to the nullification of taxbills predicated upon contracts where the evidence shows that the contractors have in good faith made an honest and reasonable effort to perform the work in accordance with the terms of their agreement, the rights of the property-holder must not

be entirely ignored. The very fact of a proceeding to enforce a taxbill is to compel the property-owner to pay a tax for a benefit which he has not sought and about which he has made no agreement; it, therefore, is a right which the citizen is at liberty to invoke that the entire transaction, including the contract and the performance of it, which leads to the result of the issuance of a taxbill against his property, shall be subject to a fair and reasonable interpretation by the courts of the country. And where, as in this case, all the facts in reference to the beginning and execution of the contract and the time within which the work was done, are undisputed and conceded, as shown by the plaintiff's own evidence, it is a matter of law for the court to decide whether the work has been done within a reasonable time. In this case, our learned brother on the circuit held that it had not been, and accordingly sustained a demurrer to the evidence; subsequently he granted a motion for a new trial on the ground that he had erred in sustaining the demurrer to the evidence. Obviously the circuit court committed no error in refusing instructions 8, 9, 10, 11, 12, and 13, all predicated upon section 23 of article 9 of the charter, which denied the defendant the right to show a violation of said contract for the reason that he had not filed with the Board of Public Works within sixty days from the issue of the taxbill sued upon a written statement of each and all objections which he might have to the validity of such taxbills, because, as already held, said section was unconstitutional, null and void. Neither did the court err in refusing the first instruction, which peremptorily directed a verdict for the plaintiff for the full amount of the taxbill and interest to date of trial.

As we have already ruled, the contractor did not comply with the contract, either strictly or substan-

205 Sup—6

tially, and he was not entitled to recover on that theory. Nor did the court err in refusing instructions 4, 5 and 6 asked by plaintiff on the theory that under the last clause of section 18 of article 9 of the charter plaintiff could recover the actual value of the work done. Without expressing an opinion as to whether such clause is a valid constitutional enactment, it is obvious there is no ground for invoking it in this case, because there was absolutely no proof as to the actual value of said work or what defendant's proportionate share thereof would have been on such a basis. Moreover, the instruction entirely ignored the deduction from the final estimate of the penalty of ten dollars for each and every working day after the day said work should have been completed. The case was not tried with reference to said section 18 of article 9, and the court properly refused said instructions. While the court might have properly given the third instruction, no prejudice resulted to plaintiff for the reason that the failure of the contractor to do the work in a reasonable time fully justified the court in giving the instruction in the nature of a demurrer to the evidence.

It follows that the circuit court erred in granting a new trial and its judgment is reversed and the cause remanded with instructions to set aside said order granting a new trial and enter final judgment for the defendant, Arkansas McAlester Coal Company, and for costs.

*Fox, P. J.,* and *Burgess, J.,* concur.