## CHARLESTON.

STATE *ex rel.* H. H. BUTTS v. JNO. T. WOLFORD.

Submitted July 6, 1920.    Decided July 8, 1920.

MUNICIPAL CORPORATIONS—*City Charter Construed Not to Make Mayor Member of Council Nor to Confer Power to Vote in its Deliberations.*

Interpreted and construed under the rules requiring all acts *in pari materia* to be considered upon the inquiry for the meaning of a doubtful statute and giving due weight to the construction of such a statute by the officers charged with the duty of executing it, the charter of the City of Martinsburg, passed by the Legislature, February 11, 1915, does not make the mayor of said city a member of its council nor confer upon him power to vote in its deliberations and actions.

(WILLIAMS, PRESIDENT, absent).

Original proceedings in mandamus by the State, on the relation of H. H. Butts, against John T. Wolford, to compel an outgoing City Treasurer to surrender the office and funds in his hands.                                  *Peremptory writ awarded.*

*J. O. Henson,* for relator.

*Chas. J. Faulkner* and *A. C. McIntire,* for respondent.

POFFENBARGER, JUDGE:

The sole inquiry in this proceeding by mandamus, to compel the alleged outgoing treasurer of the City of Martinsburg to surrender to the relator, who claims to have been elected as his successor, the office and city funds in his hands, is whether the mayor of said city is a member of its common council and entitled to vote on questions arising therein. If he is not, that body consists of five elected members, three of whom voted for the relator, while the other two voted for the respondent, and

the title of the former is clear. Claiming membership, the mayor attempted to vote for the respondent and thus create a tie and then vote again to break the tie; but the recorder refused to record his votes. After this procedure, the respondent, by direction of the mayor and in the presence of the council, took the oath of office of treasurer of the city; and the relator took a like oath and tendered the bond required by an ordinance, and then unavailingly demanded possession of the office.

As to the right of membership claimed by the mayor, the terms of the charter are not specific, but its existence, as a matter arising out of them by implication or proper construction, is earnestly insisted upon. The present charter is Chapter 6, Acts of 1915, Municipal Charters. Its previous charter was Chapter 6 of the Acts of 1909. Both of these acts were amendments and reanactments of an act passed February 29, 1868, and subsequently amended by numerous acts of the Legislature. By the Act of 1868, the mayor was made a member of the common council, but his right to vote therein was restricted. He was expressly inhibited from voting, "unless in case of an election or a tie." By sec. 31 of the charter of 1909, it was made his duty to preside at all meetings of the council and he was expressly given the right to vote "in case of a tie." The Act of 1868 declared that the mayor and the councilmen should constitute the common council. These terms were altered by the Acts of 1909 and 1915, so as to read as follows: "The municipal authorities of the City of Martinsburg shall be the mayor and one councilman from each of the five wards, who shall constitute the council." The Act of 1915 omits the provision of the Act of 1909, authorizing the mayor to preside at meetings of the council and to vote in the case of a tie. But there are terms assigning him functions at council meetings. "All ordinances passed by the council shall be spread at large upon the minutes; and at the next regular meeting such ordinances shall be read in open council and the mayor shall sign said minutes, when found correct or corrected, in the presence of the council." Art. 24, sec. 38. The article relating to the duties of the recorder provides that "In the absence of the mayor, he shall exercise the functions of mayor except at meetings of the council."

Provisions more general and fundamental in character, relied upon in the argument for the respondent, declare that all of the corporate powers of the city shall be exercised by the council or under its authority; that the mayor and councilmen "shall have possession and exercise corporate powers as a body politic"; that the municipal authorities shall be the mayor and one councilman from each of the five wards, who shall constitute the council; that the municipal authorities of the city, acting under the powers and in the manner specified in the charter, shall have and exercise a great many enumerated powers including "all the rights, privileges and powers provided by chapter forty-seven of the Code," not inconsistent with the provisions of the charter.

Against them, the relator invokes the legislative policy disclosed by the previous legislation and certain provisions indicative of intent to limit the functions of the mayor to executive and judicial acts and to fix the number of councilmen at five. The mayor makes appointments to be confirmed by the council. He appoints members of the fire department with the advice and consent of the council. He is made the chief executive officer of the city and is required faithfully to execute the orders, by-laws, ordinances, acts and resolutions of the council. Like the president and governors, he is required to recommend, from time to time, such measures as he may deem needful for the welfare of the city. Nowhere in the particular enumeration of his duties is he assigned a place in the council. The council is authorized to remove officers for cause by a four-fifths vote, and the affirmative vote of three-fifths of its members is required for dispensation with the reference of an ordinance to a committee. Official construction is also relied upon. Never in the history of the city, so far as can be ascertained, has the mayor voted as a member of the council, except to break a tie, nor has he voted in such case since the Act of 1915 has been in effect.

The general policy of the law, as disclosed by provisions of chapter 47 of the Code and numerous special charters, and parliamentary usages and precedents favor the interpretation contended for by the respondent; but it cannot be said that there is any constitutional rule or other inflexible law requiring the

presiding officer of a tribunal to be a member thereof or to be clothed with the right to vote in its deliberations and actions. His status depends upon the organic law of the body itself, and that sometimes confers and sometimes withholds these privileges. No doubt the prevailing rule is entitled to some weight in the construction of an ambiguous charter, but certainly no more than is ordinarily accorded by the principle of analogy.

In all of the cases relied upon as precedents, in the argument submitted for the respondent, the statutory provisions involved and governing the question were different in their terms from those now under consideration. They expressed clear legislative intent to make the mayor a member of the council. *City of Benwood* v. *Wheeling R. Co.,* 53 W. Va. 465; *Riggs* v. *Carroll,* 66 W. Va. 503; *Wood* v. *Gordon,* 58 W. Va. 321. Hence they do not aid us materially in reaching a conclusion.

The present charter of the city and all those previously enacted are acts *in pari matria;* wherefore the legislative policy manifested in them has a more direct and appropriate bearing upon the meaning of the provisions under consideration than any supposed general policy or principle. Its field or scope of operation is narrower and is confined to the subject we are dealing with. In the enactment of every special charter, the Legislature responds largely to the will of the inhabitants of the incorporated territory. They seek the charter and make known their views and desires through their legislative representatives. Hence, clearly legislative policy, as manifested in a general statute, is only one of the elements recognized in the enactment. The restriction expressly imposed by the Act of 1868 and another impliedly imposed by the Act of 1909 obviously prove the correctness of this observation. In these two provisions there is found also a clear manifestation of a special policy respecting the status of the mayor of the City of Martinsburg, established by the Legislature in deference to the wishes of the inhabitants of said city, which, presumptively, it was not the intention to alter. This presumption should stand, in the absence of clear expression of intent to change it. Such is the effect of the rule of interpretation requiring all acts *in pari materia* to be read and considered together, upon the construction of a doubtful statutory provision, even though some or all

of the previous acts may have been repealed. *Daniel* v. *Simms,* 49 W. Va. 554; *Rathbone* v. *Hamilton,* 175 U. S. 414; *Ogden City* v. *Boreman,* 20 Utah 98; Lewis' Suth. Stat. Con., sec. 452.

The charter contains no expression of clear intention to make the mayor a member of the council or confer upon him the right to vote. The requirement of his signature to the minutes argues nothing more than that he may preside, and the limitation upon the recorder's powers, when acting in the absence of the mayor, is satisfied and given due effect by his exclusion from the chair and denial of right in him to sign the minutes as acting mayor. The mayor and councilmen constitute the municipal authorities and a great many powers are bestowed upon the "municipal authorities." But there are qualifying words which may require separate action and division of powers. Section 8 says the municipal authorities, "acting under the powers and in the manner" specified in the chapter, shall have and exercise the powers conferred. This section is, therefore, not inconsistent with intent to put the power of legislation in the council and the power of execution or administration in the mayor. Nor does the adoption of chapter 47, insofar as it is not inconsistent, necessarily or clearly express intent to confer upon the individuals or officials possessing the corporate powers, the rights, privileges and powers given to corresponding officers by chapter 47. The terms are given due effect and legally satisfied by the view that the corporation, as contradistinguished from its officers, shall have and exercise such powers. The rule of interpretation requires the court to give some effect to all words, phrases and clauses found in the statute, but it does not always require us to give them effect to the full extent of their literal import.

The official interpretation and construction put upon the charter sustains the contention of the relator, under another well settled rule. "The construction given to a statute by those charged with the duty of executing it, ought not to be overruled without cogent reasons." *U. S.* v. *Moore,* 95 U. S. 760; *Brown* v. *U. S.,* 113 U. S. 568; *Daniel* v. *Simms,* 49 W. Va. 554; *State ex rel. Brandon* v. *Board of Control,* 85 W. Va. 739, 100 S. E. 215.

Upon these principles and conclusions, an order will be entered awarding the peremptory writ moved for.

*Peremptory writ awarded.*