THE MORTGAGE COMPANY OF MARYLAND, INC., *a corporation, etc. v.* ED LORY *et als.*

(No. 6993)

Submitted May 13, 1931. Decided May 26, 1931.

*McCabe & McCabe* and *R. N. Stephens, Jr.,* for appellant.
*Coleman, Thompson & Woodroe,* for Bank of Dunbar; *Henry S. Cato,* for G. T. Fogle & Company; *O. B. Bobbitt,* for Hanchett Bond Company; *W. E. R. Byrne,* for Pfaff & Smith Builders Supply Company; *H. W. Bowers,* for K. E. Reed & Company, Title Ins. Company of Richmond and Reed & Lapsley; *E. S. Bock,* for Cambria Clay Products Company; *E. W. Knight & Herman Bennett,* for Ohio Savings Bank & Trust Company; *Dale G. Casto,* for City of Dunbar, *Amicus Curiae; Jno T. Simms,* for State Tax Commissioner, *Amicus Curiae.*

WOODS, JUDGE:

On October 15, 1925, The Mortgage Company of Maryland, Inc., loaned to West Charleston Development Company the sum of $130,000.00, which loan was evidenced by the negotiable note of the development company endorsed by Ed Lory, and further secured by a trust deed of even date therewith, granting and conveying to Charleston Trust Company and R. E. McCabe, Trustees, approximately 300 unimproved lots situated in the west end of Dunbar, Kanawha county, West Virginia. As additional security, the development company on October 21, 1925, by written assignment, transferred and assigned to the mortgage company seven negotiable promissory notes aggregating $215,466.54, out of a series of eight executed by Poteet & Woodroe, a corporation, on September

15, 1924, and payable to the order of West Charleston Development Company, all eight of which were secured by a deed of trust of even date therewith on approximately 750 unimproved lots situate in the west end of Dunbar. The two deeds of trust in the order mentioned and the assignment were duly recorded in the office of the clerk of the county court of Kanawha county, on October 22, 1925, and October 22, 1924, and October 28, 1925, respectively. Certain payments were made on the principal indebtedness aforesaid by the development company until said indebtedness was reduced to $85,-862.97 as of November 21, 1927. Pursuant to the assignment aforesaid, the mortgage company advertised the Poteet & Woodroe notes for sale and became the purchaser thereof on May 12, 1930, and is now the owner thereof. The eighth and last note of the Poteet & Woodroe series, in the amount of $8,000.00, payable on or before December 31, 1932, was assigned to W. T. Moore by the development company, as commissions on the sale of Poteet & Woodroe of the lots on which the deed of trust of September 15, 1924, is a lien. This note was assigned by Moore to the Bank of Dunbar before the assignment of the first seven to the mortgage company.

Some time after the recordation of the several instruments aforesaid, the council of the city of Dunbar entertained resolutions which ultimately resulted in the paving of sundry streets in the west end of said city of Dunbar and the cost of said paving, approximately $210,000.00, was assessed against substantially the whole of the lots conveyed to trustees by the two trust deeds hereinbefore mentioned. The mortgage company had no actual notice of said work until many months after the same was completed. Poteet & Woodroe, Inc., and Ed Lory are bankrupts and the development company is totally insolvent, leaving the above described lots the sole security for the payment of the mortgage company's lien.

The mortgage company, appellant herein, instituted a suit to subject the property of Lory and the development company to the payment of a claim of $85,000.00. Although primarily a creditor's suit, the plaintiff, in an effort to advance the priority of its liens, claimed that a number of conveyances

were fraudulent and certain liens of others void. The bill was amended several times and finally took shape in the form of an amended and supplemental bill. This came before this Court on the validity of the order of the circuit court sustaining the demurrer, and this Court sustained the ruling of the lower court, dismissing the bill in so far as it sought to attack the validity of special assessments against the property of Poteet & Woodroe and the development company. *Mortgage Company* v. *Ed Lory et al.*, 109 W. Va. 310, 154 S. E. 136. After being returned to the lower court, the second amended and supplemental bill was filed. This bill sought to advance the lien of the appellant over the special assessment liens.

The issues of law were raised by exceptions to the commissioner's report to the effect that the special assessment liens were, under the charter as amended in 1925, subordinate to the trust deed liens, and that the note held by the Bank of Dunbar was entitled to priority over the seven assigned to the mortgage company. The chancellor sustained defendants' exception to the first finding and overruled plaintiff's exception to the second.

So much of the statute (chapter 7, Acts 1921, Municipal Charters), incorporating the city of Dunbar, as affects the priority of the paving liens is found in sections 61 and 62. The former section, which deals with paving assessments, provides:

"* * * It shall be the duty of the council to immediately certify such assessment to the treasurer for collection as herein provided, and a copy of said order shall be certified by the city clerk to the county court of Kanawha County, who shall record and index the same in the proper trust deed book in the name of each person against whose property assessments appear therein. * * * They (paving assessments) shall be a lien upon the property liable therefor the same as taxes, which lien may be enforced in the same manner as provided for taxes. The lien hereinafter provided for shall have priority over all other liens except those for taxes due the state, and shall be on a parity with taxes and assessments due the city."

And the latter, after making provision for sewer assessments, concludes with the proviso:

"The liens herein and hereinbefore provided for street paving, macadamizing and sewerage assessments, and assessments for other improvements, shall constitute liens upon the real estate upon which they are assessed, as against creditors of the owners thereof, or purchasers for value, and without actual notice of such liens, only from and after the time that the statement thereof certified as aforesaid shall be filed for record in the office of the clerk of the county court of Kanawha County; provided, that in case any lot of land so assessed in the name of a particular owner shall have been conveyed by him before the lien thereon shall have been certified and fixed with the clerk of the county court, as aforesaid, the said lien shall nevertheless attach to the land in the hands of the subsequent owner, and the same in all respects as if the assessment were made in his name."

By chapter 29, Acts 1925, the above portion of section 62 of the charter was amended and re-enacted, as follows:

"The liens herein and hereinbefore provided for street paving, macadamizing and sewerage assessments, and assessments for other improvements, shall constitute liens upon the real estate upon which they are assessed, as against creditors of the owners thereof, or purchasers for value, and without actual notice of such liens, only from and after the date that the contract is made for such work, *and shall have priority over all liens placed on said real estate after said contract is made by the city of said work.*"

An identical provision was inserted at the end of paragraph 62-a (a new section) which likewise deals with sewerage.

Before considering the effect of the amendment of 1925, let us look to the general law regarding priority of liens against city property. By the statute law of this state, it is provided that a paving assessment "shall have priority over all other liens except those for taxes due the state, and shall be on a parity with taxes and assessments due the city."

Chapter 47, section 49-c (2), Code 1923. Section 49-c (3), relating to sewer assessments, contains a similar provision. That the legislature may create a lien for taxes, whether such taxes be general or by local assessment, superior to all other liens, regardless of priority of time, is well settled. *Bauman v. Ross*, 167 U. S. 548; *Provident Institution* v. *Jersey City*, 113 U. S. 506. Purchasers must take notice of the state's power over the property they buy. Individuals can obtain no rights against its known right of taxation and regulation. *City of Elkins* v. *Harper*, 82 W. Va. 377. The construction given a statute by those charged with the duty of executing it ought not to be overruled without cogent reasons; and where the statute is ambiguous, contemporaneous, and uniform, executive construction of the statute will be regarded by the Court as decisive. *Daniels* v. *Simms*, 49 W. Va. 554; *Singleton* v. *County Court*, 84 W. Va. 691; *State ex rel. Butts* v. *Wolford*, 86 W. Va. 549. This Court, on the former appeal in the instant case, said: "Plaintiff made the loan and acquired its liens with the law plainly written that the municipality might undertake street improvements and that the cost thereof would constitute assessments against the property. * * * Plaintiff could easily have kept itself informed of the proposed municipal improvements, but, not having done so, it must take the situation as it has been developed with reference to the rights of other parties."

The mortgage company relies on the 1925 charter amendment to sustain its alleged priority over the paving assessments. The defendants insist (1) that the amendment does not confer any such right, and (2), if so, that it is unconstitutional.

If we give the amendment its literal meaning, as contended for by plaintiff, is it constitutional? A municipal corporation is without power to levy taxes or special assessments for street improvements in the absence of legislative authority. *Fairmont* v. *Bishop*, 68 W. Va. 308; *Probasco* v. *Moundsville*, 11 W. Va. 501. But the legislature, in the absence of express constitutional authority, may confer such power upon a municipality. However, section 9, Article X, of our Constitution, qualifies and safeguards this authority by the pro-

vision that the legislature may, by law, "authorize the corporate authorities of cities, towns and villages, for corporate purposes, to assess and collect taxes; but such taxes shall be uniform, with respect to persons, and property within the jurisdiction of the authority imposing the same."

While taxes to meet the cost of such improvement are not such as must, under constitutional provisions for equality and uniformity of taxation be borne by all taxpayers or all property of a municipality, such taxes may be laid against the owners of the abutting property on the theory that said property has been specially benefitted by the paving. It is established, however, by many decisions of this Court, that the levying of such special assessments is an exercise of the taxing power, and that the laying thereof being such exercise of the taxing power, legislation authorizing it must require uniformity in the application of each special assessment in respect of persons and property. This cannot be unless the cost of the public improvement is proportionately assessed against all property presumed to be benefitted thereby and also the payment of each assessment is secured in the same way and, as effectively as each other assessment for the same improvement.

The council of the city of Dunbar is, by its charter, given the right whenever it shall deem it expedient to cause any street or alley to be paved, and to charge the abutting property owners with a proportionate share of the expense. This may be done in either one of two ways: (1) the city making payments to the contractor, and looking to the property for payment, or (2) by the city's issuance to the contractor of certificates, which are made liens upon the property. Under the general law, such expense constitutes a lien upon the property on a parity with taxes and assessments due the city. And a similar declaration is incorporated in the body of both sections 61 and 62, and by reference in section 85. Such right is bestowed on the theory that the city is one of the component parts of the government. But let us recur to the quoted provision from the 1925 amendment. What is its effect? Assume for the moment that the council should decide to pave a particular street in the city, wherein every other

abutting lot was covered by a deed of trust or a judgment lien for more than the actual worth of the property, and a number of the owners of the encumbered lots were insolvent. What would be the ultimate outcome of the paving project? If the city let the contract under section 61, it would pay the contractor and look to the lots and the holders thereof for payment. If an incumbered lot was sold to satisfy the city's lien, the mortgagee or other lienor would come in and take the receipts from the sale, and leave the city to sue the individual personally, if he had any property which could be levied against. The contractor has a right to collect from the city. The city would ultimately have to raise the deficiency through some system of taxation, in which event the owners of the unincumbered lots would have to again pay a portion for the paving. Such a situation would not amount to "uniform" taxation. Or, if we assume that the city chose to follow the certificate plan provided for in section 85, no contractor would assume the work. He could not afford to furnish all materials, labor, etc., required, and take in return therefor certificates that he could not market readily. The only kind of a contract that he would take would be for the paving in front of those properties not incumbered. Such a situation would be intolerable—a paved portion here and there, and in some instances only half way across the street. The theory upon which assessments are made—that the property had been peculiarly benefitted—would be broken down. Paving is of inconsequential value, unless it connects with other paving. One or two pieces of incumbered property could hold up a paving project. To permit such a situation to exist is contrary to the general policy of local city government.

This position finds support in the case of *Fulkerson* v. *Bristol*, 105 Va. 555, where an assessment was held to be unconstitutional because of the fact that a street improvement was sought to be enforced against all where part of the persons benefitted by such improvement had been released by a constitutional provision created before the municipal authorities had perfected its assessment against all of the properties. So, according to the foregoing, and our inability to give the italicized portion of the statute any other meaning than that con-

tended for by plaintiff, we are constrained to declare the provision violative of our Constitution.

The paragraphs containing the unconstitutional matter, in their original form (sec. 62, Chap. 7, Acts 1921) fixed the time that a lien should attach in the exact language of section 49-c (3), chapter 47, Code 1923, with an added provision to the effect that subsequent owners were liable to assessments, when the original owner had conveyed the property assessed before recordation of the lien. However, under the 1925 provisions (secs. 62 and 62a) the lien attaches as of the date of the contract for the work, and immediately following appears the unconstitutional clause that such lien "shall have priority over all liens placed on said real estate after said contract is made by the city of said work." As indicated by the introductory clauses, the paragraphs purport to apply to paving (sec. 61) as well as sewer assessments. The words just quoted, as we construe them are repugant to both the general law and the specific statements incorporated in the body of the sections, including 85, to the effect that such liens "shall have priority over all other liens except those for taxes due the state, and shall be on a parity with taxes and assessments due the city." Ordinarily, the last provision in a statute is controlling over a prior one. But to give life to the last statement in the instant case is to destroy both, as the latter is unconstitutional. The legislature is presumed to have acted in the light of the constitution, and not to have done a vain thing. The very fact that the statement itself is not clear, also would, in the instant case, tend to give life to the clear cut statements contained in the body of the sections. The sections, with the removal of the objectionable part, are otherwise complete in themselves. The provisions thereof being separable from the unconstitutional matter, remain in full force and vigor so far as the issue in this case is concerned. The city, in issuing the certificates, has given executive construction thereto.

As to the court's finding that the Bank of Dunbar's lien was prior to plaintiff's lien under the deed of trust of September 15, 1925, we are in accord. It is well settled in this State that when notes secured by a trust deed are assigned to

different parties at different times, the note first assigned has priority in the security afforded by the deed of trust, where there is no express provision to the contrary.

The decree of the circuit court must be affirmed.

*Affirmed.*