# CHARLESTON.

## M. D. DAMRON v. THE CITY OF HUNTINGTON *et al.*

### Submitted April 30, 1918.   Decided May 7, 1918.

1. MUNICIPAL CORPORATIONS—*City Commissioners—Street Improvements—Determination.*

   Under the provisions of the charter of the City of Huntington the city commissioners have the authority to determine which of the streets of said city shall be improved by paving the same, and their determination of this question, in the absence of fraud or corruption, will not be renewed by the courts.  (p. 403).

2. SAME—*Street Improvements—Assessment—Validity—Waiver.*

   One owning property abutting upon a street proposed to be improved by municipal authorities, and such improvement paid for by special assessments against the abutting property, knowing of facts which he contends makes a contract entered into between the city and a contractor for the improvement voidable, cannot escape payment of the assessment made against his property for the cost of such improvement by protesting to the authorities making the contract at the time it is made.  He must, upon his protest being disregarded, test the question by injunction before the work is done, and if he does not do so he will be held to have waived any right he may have had to question the validity of the contract.  (p. 404).

Certified Questions from Circuit Court, Cabell County.

Suit for injunction by M. D. Damron against the City of Huntington and others.  Demurrer to bill sustained, and question of its sufficiency certified by the circuit court.

*Affirmed, and cause remanded.*

*Vinson & Thompson* and *Marcum & Shepherd,* for plaintiff.
*Livezey & Irons,* for defendants.

RITZ, JUDGE:

This is a suit to enjoin the collection of certain paving certificates issued by the defendant City of Huntington against a lot owned by the plaintiff in that city, covering the cost of paving in front of said lot, and to have the lien of said assessment removed and cancelled as a cloud upon his title, upon the ground that the paving did not benefit the lot, and that the contract for the paving was let by the city to its co-defendant herein, the Stender Construction Company, for a sum largely in excess of the reasonable cost of the work. The court below sustained a demurrer to the bill, but without dismissing the same certifies to this Court the question of the sufficiency thereof.

Plaintiff alleges that he is the owner of a lot abutting on what is known as West Sixteenth Street between Virginia and Washington Avenues; that on the 28th day of August, 1916, the said City of Huntington entered into a contract with the defendant Stender Construction Company whereby it let to the said company the work of paving said West Sixteenth Street, between Virginia and Washington Avenues, and providing for the assessment of the cost of said paving against the owners of the real estate abutting on the street so improved, and for the issuance of certificates by the city to the said contractor evidencing the assessment against each of said properties. The plaintiff says that at the time of the letting of this contract he appeared before the board of commissioners of the City of Huntington, and protested against the paving of this street, and also against the letting of the contract to the particular contractor. His protest against the work being done at all was based upon the declaration that it is not a benefit to the abutting properties, but was made for the convenience of a manufacturing corporation known as the Glass Brick Company. His objection to the making of the contract was and is based upon the allegation contained in his bill, and which he says he made known to the board of commissioners at the time: that the bid of the contractor, which he says was the lowest bid offered, was excessively high; that the contractor in making up his bid included therein an estimate of what it would actually cost him

to do the work, then added a profit thereto, and to this again added some fifteen to twenty-five per cent. as the amount which the contractor conceived it would be necessary to discount the certificates in order to obtain the money thereon. His objections were disregarded by the commissioners and the contract was let, the work done thereunder, and the certificates issued against his real estate, and he brings this suit for the purpose of having a cancellation of the certificates, and the lien thereof removed as a cloud upon the title to his property.

Can the action of the commissioners in determining to improve this street by paving the same be reviewed by the court? It is not alleged that the commissioners were actuated by any fraudulent or corrupt motives in determining that this pavement should be laid, but it is simply alleged that it does not benefit the abutting property owners, but does benefit and was for the convenience of the Glass Brick Company, whose plant is at one end of the street. The authority of the commissioners of the City of Huntington, under its charter, to improve streets by paving the same is not questioned, and it seems that it is ample for the purpose. It is uniformly held, so far as we have been able to ascertain, that where the charter of a municipal corporation devolves upon its council or board of commissioners, as in this case, the authority to pave streets, this is a delegation of legislative power, and such authorities have the right to determine what streets shall be improved, and in what manner such improvement shall be made. The exercise of this power is not reviewable by the courts. The right to make the assessment against the adjoining property owners upon the basis that it was made in this case is likewise one conferred by the legislature, and while the plaintiff may be of the opinion that it does not improve his property, the determination of this question involves the exercise of legislative power which is not subject to judicial review, unless it be upon a showing that it was fraudulently or corruptly exercised. In Hamilton on Special Assessments, at § 440, this doctrine is announced: "The necessity for making local improvements is a matter for the exclusive determination of the council, when the statute

so directs; and when they act within the limits of the power conferred, their determination, fairly made, without fraud or oppression, cannot be interfered with by the courts.'' See also 28 Cyc. 955; *Wight* v. *Davidson,* 181 U. S. 371; *City of Peoria* v. *Kidder,* 26 Ill. 351; *Jackson* v. *Smith,* 120 Ind. 520. We conclude, therefore, that the determination of the city commissioners to improve this street by paving the same is not subject to review by this court upon the allegations made in the bill.

Do the allegations of the bill that the city commissioners accepted a bid in excess of what was a fair compensation for the work under the circumstances here entitle the plaintiff to relief? He alleges that he protested to the city commissioners that the bid was grossly excessive; that it was made up of an estimate of the cost of the work and reasonable profit to the contractor, and a discount which the contractor added as being necessary in order to obtain money upon the certificates. This protest of his made before the city commissioners was disregarded, and he says he declared at that time that he would contest the assessment. He says that he immediately brought suit, but, disregarding that suit, the city went on and did the work. What became of that suit does not appear. It could not have been this suit, for the reason that his bill in this case avers that the work has been done and the certificates issued. Such a suit was the proper method for him to employ in order to obtain relief, and if that suit was decided against him, of course, the judgment or decree would be *res adjudicata,* and would settle the question. However that may be, we are not concerned with that case, but only with this suit brought after the work was done, and after the assessment was made. The plaintiff shows by his bill that he was fully cognizant of all the facts upon which he now relies to defeat this assessment at the time the contract was entered into between the city and the contractor, and that he urged them before the commissioners. If there was merit in his contention that the awarding of this contract, at the price at which it was awarded, was a violation of the authority conferred upon the commissioners, should he have contented himself with making the protest

before the commissioners, and after this protest was over-
ruled do nothing to prevent the work from being done, or to
have the merits of his contention determined by some other
authority having jurisdiction to settle the question? We
think not. Why did he not, upon the overruling of his pro-
test, apply to the courts for injunctive relief against the
execution of the contract? In such a suit the validity of the
contract could have been, and would have been, fully de-
termined before any of the work had been done, or any money
expended. He chose, however, to take no action with a view
to stopping the work, but allowed it to be proceeded with,
and then after the money had been spent, and the improve-
ment made, he brings a suit to cancel the assessments. It
seems to us that inasmuch as he was in possession of all the
facts which he now claims made this contract invalid, it was
his duty, if he desired to escape the burden which the same
would impose upon him, to pursue all of the remedies at hand
for the abrogation of it before the same had been fully per-
formed. In Hamilton on Special Assessments, at § 732, the
author says: "As a necessary corollary to what has pre-
ceded, action on the part of the property owner must be
reasonably prompt, so that no false conclusions may be drawn
from his inaction. If he object to the power of the council
to order the work done, or denies the validity of a provision
in the ordinance under which the work is done, requiring the
contractor to employ only *bona fide* residents of the city, as
being prejudicial to his property rights as increasing the
cost of the work, he must act in time to stay the work *in
limine.*" And this doctrine is announced upon the authority
of the decision of the Supreme Court of the United States
in *Chadwick* v. *Kelley,* 187 U. S. 540, wherein that court held
that the party must not only object to the improvement be-
ing made under the contract, but he must take such steps as
will raise the question in time to stay the work and prevent
the expenditure of the money. So McQuillin, in his work
on Municipal Corporations, § 2120 says: "It is the duty of
the parties assessed for an improvement to act promptly if
they wish to avail themselves of irregularities in the im-
provement proceedings, and not wait until after the con-

tracts are made and expense incurred in the doing of the work.'' And in *Palmer* v. *Stumph,* 29 Ind. 329, it is held that where the owner of property fronting on a city street, for the improvement of which the common council has made a contract, denies the power of the council to order the improvement, he must test the question before the work is done. If he allows it to proceed and acquiesces in the action of the council in making the contract, he cannot thereafter raise the question of its invalidity. Again in *City of Lafayette* v. *Fowler,* 34 Ind. 140, it was held that where the owner of real estate abutting on a street ordered to be improved by the city, knowing of the matters which he claims makes the assessment for such improvements invalid, does not by injunction seek to prevent such improvement, he cannot after the work is completed, or nearly completed, refuse to pay for it. See also *Alley* v. *City of Lebanon,* 146 Ind. 125. In the case of *Brewer* v. *Elizabeth,* 66 N. J. L. 547, it was held that where a party owning property abutting on a city street protested from time to time to the city authorities against the improvement of the street, and against the validity of the contract under which the improvement was made, but did not take any proceeding to enjoin or prevent the doing of the work, he could not, after the work was done, and the assessment levied against him, avoid the collection of it. See also *City of Corry* v. *Corry Chair Company,* 18 Pa. Sup. Ct. Rep. 271; *City of Peoria* v. *Kidder,* 26 Ill. 351, and *Werninger* v. *Stevenson,* decided at this term of this court, and authorities there cited. We know there are a great many authorities which hold that if the property owner makes protest before the governing body he will not be estopped to claim the assessment invalid after it is made, but we do not think they are sound. The courts are just as open to parties before the contract is executed and the expense incurred to enjoin the execution of it, and to prevent the outlay of the money, as they are afterward to cancel the assessment for the alleged invalidity, and we conclude that where one owning property, abutting on a street proposed to be improved, has full knowledge of the matters which he claims renders the contract for the same invalid, and he does no more than protest to such

body, he cannot, after the work is done, escape paying the assessment therefor.   He must go further.   He must avail himself of the remedies provided for preventing the alleged injury to him, and where, as in this case, the courts are just as open to him before the contract is performed to test its validity as they are afterward, he cannot be said to be acting in entire good faith to permit the money to be expended, knowing that it is the intention of the city authorities to levy it against his property as an assessment, and then appeal to the courts to cancel such assessment.

Whether the matter set up by the plaintiff in his bill would be cause for vacating the contract and holding it invalid, had he taken advantage of it at the proper time, we need not and do not say in this suit.   It may be said, however, that if it is true that the bids were computed as alleged in this case, and an allowance added to them by the contractor for the discount of the paving certificates, and the city commissioners knew this fact, it would, to say the least, be a very good reason for rejecting all of the bids.   It should convince them that the bids were excessive, and where, as in the case of the City of Huntington, it can do the work itself without letting it to contract, it might proceed to do it on its own account, and levy the assessments against the property, or determine not to do the work at all if bidders refuse to do it without making such excessive charges therefor.

Finding no error in the decree of the circuit court sustaining the demurrer to the bill, we affirm the same and remand the cause.

*Affirmed, and cause remanded.*