# CHARLESTON.

MORTGAGE CO. OF MARYLAND *v.* LORY *et al.*

(No. 6711)

Submitted May 13, 1930. Decided May 27, 1930.

(Rehearing Denied July 17, 1930)

*McCabe & McCabe* and *R. N. Stephens, Jr.,* for appellant. *Brown, Jackson & Knight, Herman L. Bennett, O. B. Bobbitt, E. S. Bock, H. W. Bowers, W. E. R. Byrne* and *Henry S. Cato,* for appellees.

MAXWELL, JUDGE.

On October 15, 1925, plaintiff, the Mortgage Company of Maryland, loaned to West Charleston Development Company the sum of $130,000, evidenced by the Development Company's note, indorsed by Ed Lory, and secured by a deed of trust of the same date upon several hundred residence lots in the municipality of Dunbar, Kanawha county. As additional security for the said note, the Development Company transferred and delivered to plaintiff certain notes of Poteet & Woodroe, Inc. These notes which were payable to the Development Company were secured by deed of trust dated September 15, 1924, on certain other real estate likewise located in Dunbar, which had been purchased from the West Charleston Development Company by Poteet & Woodroe. Both of these trust deeds were properly recorded on the date they were executed.

In April, 1926, the council of the city of Dunbar gave consideration to the matter of paving and sewering certain streets within the city, and such proceedings were thereafter had that the paving and sewering were done and the cost thereof was assessed against the abutting lots which comprised substantially the whole of the various lots of land embraced by the trust deeds above mentioned. On November 21, 1927, plaintiff recovered a judgment against the Development Company and Ed Lory upon its $130,000 note for $85,682.97, being the unpaid balance thereof, with interest.

The date on which the present chancery proceeding was instituted does not appear in the record, but the amended and supplemental bill was filed on the 17th day of December, 1928. The plaintiff sued on behalf of itself and all other lien creditors of Ed Lory and the Development Company. There are many defendants.

The trial chancellor sustained demurrers to the plaintiff's bill in so far as the bill sought to attack the validity of the paving and sewering assessments against the property of Poteet & Woodroe, Inc., and the Development Company, and to have said special assessments and the lien thereof declared void on the ground that they are confiscatory. It is from the ruling of the trial chancellor sustaining the demurrers in the

above particulars that plaintiff appeals. In assigning error, plaintiff reiterates the allegation of its bill that the paving assessments did not benefit the lots and that they were in fact confiscatory, and claims that by their demurrers defendants admit these allegations of fact. Plaintiff further says that such assessments, being confiscatory, are void and can be attacked at any time by any one, and hence the demurrers should have been overruled.

By legislative enactment, Acts of the Legislature of 1921 (Municipal Charters), chapter 7, the municipality of Dunbar was granted a charter, section 61 of which authorizes the council whenever it shall deem it expedient "to cause any street or alley in said city or portion thereof to be paved, curbed, or macadamized, or otherwise improved in a permanent manner. * * *" By section 63 the resolution for paving must be published at least once a week for two successive weeks; by section 64, a copy of such resolution must be served upon the owner of each piece of property to be assessed; by section 67, council must sit for the purpose of hearing any property owner so affected, and, if council decides to proceed with the improvement, an ordinance must be passed to that effect; thereafter, by section 90, the caption or title to such ordinance must be published distinctly stating the import of the ordinance.

The bill does not allege that any requirement of the charter was not complied with, nor is it contended that any of the property owners affected by the assessments appeared before the council of the city of Dunbar and objected. But plaintiff says that it did not have notice of this proposed paving and sewering. The record nowhere discloses that actual notice was given to plaintiff, but in the deed of trust of September 15, 1924, given by Poteet & Woodroe, Inc., to secure the notes given to the Development Company in purchase of land from it, which deed of trust along with said notes had been assigned to plaintiff as additional security at the time of the loan, there is this clause: "The Grantor covenants that as long as the trust hereby created shall continue, it will pay all taxes, liens, assessments and other governmental charges now, or hereafter, assessed or imposed by any lawful authority upon the property

hereby conveyed or any part thereof. * * *'' It cannot be gainsaid that plaintiff was warned by this provision in the trust deed to be on the lookout for paving assessments. Whether the same provision appeared in the trust deed of October 15, 1925, is not disclosed by the record as printed.

Was it necessary for the plaintiff to have notice? The charter does not require that notice be given to lien-holders. It is true that a grantee in a deed of trust to secure a debt is a purchaser for valuable consideration, *Bailey* v. *Hudkins,* 103 W. Va. 556, 138 S. E. 118, and cases cited, but we fail to see wherein that principle changes the status of plaintiff from that of a lien creditor. As such lienor, therefore, was the plaintiff entitled to notice? ''Mortgagees and other lien holders, or persons simply having such interest in the property that they may possibly be affected by the enforcement of a special assessment against it, are not entitled to notice and an opportunity to be heard in assessment proceedings. The reason for this is that a mortgagee takes his lien subject to the rights of the state, or of any municipal authority to which the power is properly delegated, to impose on the property in accordance with law not only general taxes, but special assessments. He is not the owner of the property, but a lien holder merely ; and the fact that incidentally the value of his lien may be impaired by the enforcement against the property of general or special taxes does not give him a constitutional right to be notified of the proceedings under which such taxes are imposed ; the possible impairment of his lien does not amount in such cases to a taking of property without due process of law.'' 25 R. C. L. § 77, p. 165. ''In general, only the true owner of the property assessed is entitled to notice and hearing, and mortgagees or lien holders, or other persons having an interest in the property that may be affected by an assessment, are not entitled to notice and hearing.'' 44 C. J. § 3058, p. 630. These authorities and the cases on which they are predicated indicate plainly that plaintiff has no just complaint because of its failure to receive notice of the proposed paving. Note particularly the case of *Fitchpatrick* v. *Botheras,* 150 Iowa, 376, 130 N. W. 163, 37 L. R. A. (N. S.) 558.

The proposition mainly relied on by plaintiff is the ''arbi-

314

trary, oppressive, capricious, unjust, unwarranted and unreasonable action'' of the council of Dunbar in passing a confiscatory paving and sewering ordinance, the assessments under which, therefore, it is alleged, are void. Can it be said that the council acted arbitrarily or unwarrantedly, in view of the fact that notice was given to the property owners and none objected? An examination of the cases cited by plaintiff to substantiate this proposition discloses no case in point with the instant case. It may be true that an assessment entirely out of proportion to the benefits accruing to the abutting landowners is of itself unwarranted, but, when ample notice has been given the landowners to appear before council and object to the proposed municipal improvement that may result in property assessments which will be excessive, and they have not appeared, nor attempted by injunctive process to have their rights determined, can it be said that such procedure of the municipality is unwarranted and capricious? Our answer must be in the negative, and our conclusion is imbedded in decisions of this court. ''The courts and text-writers almost uniformly hold that when a statute provides a remedy against excessive, erroneous, or improper assessments before some officer or board appointed or elected for that purpose, the party aggrieved must at his peril avail himself of this remedy and cannot resort to the courts in the first instance; and, if he neglects to avail himself of the statutory remedy provided, he cannot assail the assessment in a collateral proceeding nor invoke the equitable powers of the courts for redress.'' *Pardee & Curtin Lumber Co.* v. *Rose,* 87 W. Va. 484, 488, 105 S. E. 792, 793. JUDGE HATCHER, speaking for the court, in *Huntington Engineering Co.* v. *Gallaher,* 101 W. Va. 110, 132 S. E. 866, 868, says: ''It may be admitted for the sake of argument that the special assessments against defendant are proven to be in excess of the peculiar benefits to his lots, but even that hypothesis would not entitle him to relief in this case—he should have sought relief in the manner provided by the charter. Every step taken by the city in making the improvement and in assessing the defendant was lawful and carries the judicial sanction of this court. The city had the power under its charter to order the improvement made.''

Regarding *City of Moundsville* v. *Yost*, 75 W. Va. 224, 83 S. E. 910, which plaintiff relies on along with cases from other jurisdictions, an examination of that case shows that a special assessment for street improvement was held void because council had failed to follow a statutory requirement in levying same. Syllabus 2 reads: "The power of a municipality to levy special assessments for street improvement upon owners of lots abutting thereon depends upon statute, and the mode of procedure therefor prescribed by the Legislature must be strictly followed in all material respects." Applying that principle to the present case, we find that the statutory requirements controlling the levying of pavement and sewer assessments in Dunbar were fulfilled, with proper notice given to the property owners to object if for any reason they did not approve the improvement program. In *Damron* v. *City of Huntington*, 82 W. Va. 401, 96 S. E. 53, 54, 9 A. L. R. 623, an abutting property owner objected to a paving assessment on the ground that it was not a benefit to abutting property owners, but was made for the convenience of a manufacturing corporation, and that the contract for the paving was so high as to be violative of the authority conferred upon the city commissioners. JUDGE RITZ said: "It is uniformly held, so far as we have been able to ascertain, that where the charter of a municipal corporation devolves upon its council or board of commissioners, as in this case, the authority to pave streets, this is a delegation of legislative power, and such authorities have the right to determine what streets shall be improved, and in what manner such improvement shall be made. The exercise of this power is not reviewable by the courts. The right to make the assessment against the adjoining property owners upon the basis that it was made in this case is likewise one conferred by the Legislature, and while the plaintiff may be of the opinion that it does not improve his property, the determination of this question involves the exercise of legislative power which is not subject to judicial review, unless it be upon a showing that it was fraudulently or corruptly exercised."

Considering the situation from another angle, the contractors who did this work for the city of Dunbar did it in the

light of the proceedings which had transpired in council with reference to the proposed work. Those proceedings disclosed compliance with the law. No fraud appears in the record, nor is any alleged in plaintiff's bill. And, later, the purchasers of the certificates acquired the same in the light of all proceedings which had transpired both before the work was done and thereafter. Nowhere was there any protest.

Plaintiff made the loan and acquired its liens with the law plainly written that the municipality might undertake street improvements and that the cost thereof would constitute assessments against the property. Since the plaintiff was indifferent to that situation,—closed its eyes thereto when its protest would have been timely—it cannot now assert that the assessments should be declared void because excessive. Plaintiff could easily have kept itself informed of proposed municipal improvements, but, not having done so, it must take the situation as it has developed with reference to the rights of other parties.

In view of the foregoing, we affirm the decree of the trial chancellor.

*Affirmed.*