G. T. FOGLE & COMPANY

*v.*

GEORGE W. KING, *et al.*

(No. 9967)

Submitted September 28, 1948. Decided

December 14, 1948.

226

Fox and KENNA, JUDGES, dissenting.

*Henry S. Cato,* for appellant.

*Kay, Casto & Amos,* for appellees.

RILEY, PRESIDENT:

G. T. Fogle & Company, the holder of a paving certificate, brought this suit in equity in the Court of Common Pleas of Kanawha County to enforce a paving assessment against Lot No. 98 of Block 17 of the Dunbar Extension to the City of Dunbar and to recover against the defendant, George W. King, any difference between the amount due under the assessment and the proceeds to be derived from the sale of the lot. The defendant filed an answer and plea of the statute of limitations. Demurrers having been overruled, plaintiff replied generally to the answer and special plea. The court of common pleas, after overruling the demurrers to the several pleadings found that (1) King was not personally liable to the plaintiff beyond the exhaustion of the value of the lot; (2) that the personal liability of King was barred by the

statute of limitations; and (3) that the only proof the court would permit to be taken before entering the decree of sale would be as to the amounts and priorities of the liens against the lot. The circuit court having refused an appeal and supersedeas, the correctness of the decree of the court of common pleas is now before this Court on appeal.

Fogle & Company, under a contract with the City of Dunbar, dated May 2, 1927, paved West Virginia Avenue on the "certificate plan," that being one of two alternate methods to finance paving projects within the city, provided by the charter of the City of Dunbar, Acts of the Legislature of West Virginia, 1921, (Municipal Charters) Chapter 7, as amended by Acts of the Legislature, 1925, (Municipal Charters) Chapter 29, the other method being by "bond issue". In the latter the paving contractor has direct recourse to the city for payment. Under the "certificate plan", Section 85 (erroneously numbered 88 in the 1925 amendment) of the charter, the city, in return for material, labor and equipment furnished, issues to the contractor certificates representing the assessment covering the cost of the improvements which are liens against the abutting properties. While these certificates are delivered in the first instance to the contractor, they may be assigned at any time. To facilitate the collection of the certificates, as well as the assignment thereof, the charter provides (1) that the holder has the right in a suit in equity to enforce the assessment liens against the abutting properties; and (2) that each certificate contain an acceleration clause to the effect that in the event of default in the payment of any one of the certificates when due, the default continuing for a period of sixty days, then all unpaid certificates shall become due and payable, and the holder of said certificates "may proceed" to collect all of such unpaid certificates "in the manner hereinbefore provided." Section 85 of the charter, as it read at the time the instant assessment was made, provided that the amount specified in each certifi-

cate should be "the personal debt of the property owner, and a lien * * *" against his property.

On December 19, 1927, the city laid assessments against the abutting properties, including an assessment of $1,035.79 against Lot No. 98, and its owner, George W. King, for which it issued to plaintiff contracting company paving assessment certificate No. 2631, and caused the assessment to be recorded in the office of the Clerk of the County Court of Kanawha County. The assessment represented by this certificate was, as charged in plaintiff's bill of complaint, payable in ten yearly installments, "the first annual installment of said assessment became due and payable to plaintiff on the 1st day of May, 1928, but was not paid by the said defendant, and that, though often demanded, no part of said assessment has ever been paid to the plaintiff by the said defendant." The present suit was instituted by process issued January 4, 1941, returnable to January Rules 1941, with the result heretofore stated.

The bill of complaint alleges that certain property taxes were paid on the part of the holder of the certificate in order to protect his lien, and that there was an assessment prior to the instant assessment for sewer and a cross street paving project, and prays that the various amounts due under the assessment be ascertained and adjudged a lien upon the lot; that a sale of the lot be had to satisfy plaintiff's tax lien and the paving assessment lien aforesaid; and that if the property be not sold for a sufficient amount to satisfy all liens thereon, then plaintiff may have a personal decree against the said George W. King for so much of said lien as remains unpaid from the proceeds of any sale in the instant suit.

King's answer made tender of the lot involved in satisfaction of plaintiff's, as well as the prior liens, and charges that the lot was not at the time of the paving, or subsequent thereto, worth in excess of five hundred dollars; that the fair market value since the paving of the street

would not exceed five hundred dollars; that Fogel & Company knew, or should have known, that, at the time of the laying of the assessment, the lot was not worth $1,035.79, the initial amount thereof; that the court's right to enter a personal decree against him for any deficiency was the taking of property without due process of law; that default in the payment of the first installment having continued for a period of sixty days, all installments became immediately due and payable, according to' the terms of the charter, on July 1, 1928; that the limitation of time within which suit can be brought has long since expired; and further the answer denies that the amount of the assessment is a personal debt of King. Also, a special plea of limitations was filed.

The sufficiency of this answer was attacked by plaintiff on three grounds: (1) That the general statute of limitations has no application to the assessment; (2) that the matter of lack of benefit to the property should have been raised, as provided in the charter, when the proposal to pave was before the Council of the City of Dunbar, and before the paving was actually done; and (3) that the charter provision making the amount of the assessment the personal debt of the defendant is constitutional. Plaintiff also challenged the plea of the statute of limitations on the ground that the statute has no application to the present proceeding. And, in a special replication to defendant's said plea, says that its suit, brought on the 4th day of January, 1941, ought not to be barred because the cause of action did not accrue or arise until May 1, 1937, the date the last payment fell due. After the demurrers had been overruled to the answer and the plea of the statute of limitations, plaintiff replied generally thereto, and the cause was continued. After some delay C. B. Early, the holder of sewer and paving assessments for work previously done on the cross street bordering on King's lot, the amount and priority not being questioned, moved the court upon notice in writing to enter a decree of sale in the cause.

Plaintiff resisted unsuccessfully the motion for a decree of sale, insisting that its general replication had put King upon affirmative proof of the allegations in his answer, regarding the value of the lot after the completion of the paving, and further that King could not prove the averments of fact contained in the answer as to the value of the property, but that plaintiff could show that the property, with the improvements was presently worth from twelve to fifteen hundred dollars. On this basis plaintiff indicated that it desired to introduce evidence regarding certain alleged inequitable conduct on King's part.

The alleged inequitable conduct relied upon by plaintiff to avoid the operation of the statute of limitations is based upon an exchange of correspondence between plaintiff and defendant and plaintiff and S. A. McQuain of Charleston. On December 12, 1928, the first payment having become delinquent on May 1, 1928, plaintiff wrote to defendant advising him that it held the paving assessment certificate involved in this suit, and requesting defendant to "Kindly advise us what disposition you intend to make, so we will know how to proceed in this matter." King wrote at the bottom of this letter a note to the effect that the lot had been sold six months previously to said McQuain, which the record discloses was untrue, and on January 10, 1929, plaintiff wrote to McQuain stating that it held the paving certificate, the amount thereof, the amount delinquent thereon, and inquired what McQuain proposed to do in settlement. On the reverse side of this letter McQuain, under date of January 21, 1929, wrote plaintiff to the effect that he was not going to pay the assessment *"on my lot * * * at the present time,* as I have consulted an attorney * * * and he says you can't collect this amt. on this property." (Italics supplied). It is contended by plaintiff that it was thus lulled into a sense of security and, relying upon the representations contained in these letters as to the ownership of the property, it delayed the bringing of a timely suit to enforce the assessment lien. However,

as hereinbefore noted, it is claimed that it did bring timely suit.

Nowhere in the record is there a copy of the assessment certificate declared on. Plaintiff and defendant, however, have proceeded on the theory that the face amount thereof was payable in ten equal installments, with interest, over a period of ten years, the first installment falling due one year after date.

The first issue involved in this cause is whether plaintiff's claim is barred by the statute of limitations. If the claim were a purely legal one and the acceleration clause automatic, defendant's position would be tenable, and the decree of the court of common pleas would have to be affirmed. According to the holding of this Court in *Horn v. City of Charleston*, 91 W.Va. 73, 112 S. E. 239, street paving assessments, duly recorded, are liens against the abutting property which partake of the nature of liens created by mortgage, and may be enforced within the same time and by the same method as a mortgage lien. Under this authority the lien may be enforced as any other mortgage indebtedness, that is, by a sale of the mortgaged property in satisfaction *pro tanto* of the indebtedness. It follows that even if the acceleration clause is automatic, the lien may be enforced within twenty years from the default, as provided by Code, 55-2-5, as in the case of a default under a mortgage.

Though there is authority to the effect that, where an acceleration provision is absolute in its terms and there is no express optional provision, the statute of limitations begins to run upon the default, which, under the charter in the instant case, would be two months after the first installment became due, we think that the better reasoned authorities are to the effect that such a provision, though absolute in its terms, is not self-operative. The acceleration provision is for the benefit of the creditor and for the purpose of further stimulating the debtor to meet his obligation promptly. To hold otherwise, as

suggested by the Court in *Keene Five Cent Savings Bank v. Reid,* 123 F. 221, 59 C.C.C. 225, certiorari denied in 119 U. S. 567, 48 L. ed. 305, 24 S. Ct. 841, "would be to confer upon the debtor the right to take advantage of his own wrong; that is, to mature an indebtedness which was intended as an investment for a given period, in advance of the time specified on the face of his note or bond by failing to keep his engagements." To the effect that such provision absolute on its face is permissive only, see *Richardson v. Warner,* 28 F. 343; *Core v. Smith,* 23 Okla. 909, 102 P. 114. For a lucid discussion and an excellent collation of authorities see note to *Perkins v. Swain,* 35 Idaho 485, 207 P. 585, 34 A. L. R. 894, note 898, 907, inclusive. We are of opinion, in view of the foregoing authorities, that the acceleration provision of the charter is not self-operative.

The acceleration clause, not being self-operative, the question arises whether plaintiff's claim for personal liability, or any part thereof, against King is barred under the general statute of limitations. Code, Chapter 55. King insists that, if the acceleration clause is not self-operative, plaintiff's right to assert personal liability against defendant is barred by the statute of limitations on all except the last two installments. In this regard, it is to be noted, that the ninth installment of the assessment became due on May 1, 1936, and the right to bring suit for that installment under the provisions of the charter accrued on July 1, 1936. This suit was instituted on January 4, 1941, so that if the five-year statute of limitations was applicable to each installment as it became due, all except the last two installments under King's contention are barred. The running of the statute of limitations commences when the right to sue accrues. *Barnes v. Lilly,* 110 W.Va. 643, 645, 159 S. E. 813; *Sperry v. Swiger,* 54 W.Va. 283, 287, 46 S. E. 125; 22 A.L.R. 450 note; 41 A.L.R. 112n. Where, as here, so far as the personal liability, as distinguished from the enforcement of the street assessment lien, is concerned, there is concurrent jurisdiction in law and in equity a

court of equity, following the law, will recognize and apply the statute of limitations. *Bennett v. Bennett,* 92 W.Va. 391, 115 S. E. 436.

The plaintiff in the brief filed in support of its petition to rehear complained of the position taken by the Court in its opinion, filed following the original hearing, wherein it was held, in dealing with the personal liability against King, that the statute of limitations began to run against each installment as it became due, and contended therein that such holding was "against the mass of authorities cited in \* \* \* (its) brief to the contrary, not one of which is even mentioned in the opinion." In this brief to rehear, now filed and relied on, plaintiff included five of the cases cited in its original brief, together with seven additional cases, all of which its counsel claims controvert the foregoing ruling. Not one of the cited cases is in point on the immediate question. Of the cases cited, *People's Trust & Savings Bank v. Hennessey,* 106 Ind. App. 257, 153 N. E. 507; *Reucking Construction Co. v. Withnell,* 269 Mo. 546, 191 S. W. 685; *Gilsonite Construction Co. v. Arkansas McAlester Coal Co.,* 205 Mo. 49, 103 S. W. 93; *National Exchange Bank v. Smith,* 63 Ind. App. 574, 114 N. E. 881;*Uvalde Rock Asphalt Co. v. Gardner,* (Tex. Civ. App.), 153 S. W. 2d 604; *Uvalde Rock Asphalt Co. v. Cartledge,* (Tex. Civ. App.), 154 S. W. 2d 314; *Bates v. Hirsch* (Mo.), 270 S. W. 141; *Fruin v. Meredith,* 145 Mo. App. 586, 122 S. W. 1107; and *Hennessey v. Breed, Elliot & Harrison,* 92 Ind. App. 165, 176 N. E. 251, are controlled by statute. In the case of *People's Trust & Savings Bank v. Hennessy, supra,* a typical case cited by counsel for plaintiff, which is controlled by statute, the applicable statute provided that:

"No action shall be brought or maintained \* \* \* to foreclose or enforce the liens of any assessment for streets \* \* \* in any case when the last installment of any such assessment has been due and payable over five years, as shown by the record creating and evidencing such lien."

Also typical of the cases, cited by counsel for plaintiff which are controlled by statute, is *National Exchange Bank v. Smith, supra,* in which the statute provided that if the property owner shall file a waiver of objections to the assessment, he may pay the assessment in ten installments. The Court, in that case, was prompted to hold that the statute of limitations did not run against a suit to foreclose the lien assessment from the time each installment became due, because the right to pay in installments was, as provided by statute, optional with the property owner, who being under no duty to pay the installments, when the optional payment dates arrived, the creditor had no concomitant right to enforce payment of the installment. Therefore, in the *Smith* case, the statute of limitations would not run as to the individual installments.

Of the twelve cases cited and relied upon by counsel for plaintiff, only *Twin Falls Water Co. v. Martens, et al.,* 271 Fed. 428, certiorari denied (1921) 257 U. S. 637, 66 L. Ed. 410; *Lowenstein v. Phelan, et al.,* 17 Neb. 429, 22 N. W. 561; and *Town of Cheraw v. Turnage,* 184 S. C. 76, 191 S. E. 831 are left for consideration. The first two cases involve suits to enforce mortgages, and the third involved a suit to enforce a street assessment lien. None, as here, involved the assertion of personal liability, in addition to the enforcement of the lien. As stated under *Horn v. City of Charleston, supra,* street assessments partake of the nature of liens created by mortgage. In the *Twin Falls Water Company* case, the Court cites *McCarty v. Goodsman,* 39 N. D. 389, 167 N. W. 503, L. R. A. 1918F 160, in which, after holding that an acceleration clause in a mortgage is not self-operative, the court held that, where the mortgage debt is represented by installment notes falling due on different dates and the holder of the mortgage did not elect to take advantage of the acceleration clause, the right to foreclose the mortgage for the entire debt first accrued upon the maturity of the last note. The Court, in that case, aptly drew the distinction between the right to

foreclose a mortgage and the right to enforce a personal liability upon the note secured thereby. "It is a well-settled rule in this jurisdiction," the Court said, "that the statute of limitations barring actions on notes and the statute barring the remedy of foreclosure are to be applied independently," and that is the rule in this State. "In a suit to enforce the lien of a trust deed securing a note upon which the statute of limitations has run, where the trust debtor has filed an answer claiming the benefit of the statute of limitations, it is error to enter a personal decree against the maker of the note for the amount thereof." Pt. 3 Syllabus, *Emmons v. Hawk,* 62 W.Va. 526, 59 S. E. 519. Also, see Pt. 5 Syllabus, *Camden v. Alkire,* 24 W.Va. 674. So the instant case is distinguishable from the last three cases, cited by counsel for plaintiff, on the ground that the statute of limitations is being invoked here against the statutory personal liability of the defendant King.

We again cite *Knoxville v. Gervin,* 169 Tenn. 532, 89 S. W. 2d 348, 103 A. L. R. 877, cited in the original opinion in this case, to the effect that the statute of limitations begins to run against the special assessment falling due only as to each installment from the date when the installment becomes due, although the property owner has the option to pay the entire indebtedness at that time. This case is unlike the case of *National Exchange Bank v. Smith, supra,* cited by counsel for plaintiff, in that property owner here does not have the option to pay in installments, but the installment payments are mandatory. In the *Smith* case, the owner, in addition to having the option to pay in installments, had the right to pay the whole indebtedness at the payment date of any installment. See 48 Am. Jur., Special or Local Assessments, Section 228.

It is well established in the decisions that when money recovery is sought on an obligation payable in installments, the statute of limitations commences to run against each installment from the time it becomes due.

This applies where an acceleration clause gives the creditor the right upon the default of one or more of the installments, or upon the happening of certain contingencies, to declare the whole sum due. 34 Am. Jur., Limitation of Actions, Section 142. For a general collation of authorities in support of the proposition that when recovery is sought on a note or other obligation payable in installments, the statute of limitations runs against each installment from the time it becomes due, see note to *Rich v. Arancio*, 277 Mass. 310, 178 N. E. 743, 82 A. L. R. 313, note, 316, 320, inclusive. Under the foregoing authorities, which we think are based upon sound reason, the first installment in the instant case, which became due on May 1, 1928, was barred under Code, Chapter 55, after the expiration of' five years from July 1, 1928, and thereafter each succeeding installment, with the exception of the last two installments, was barred five years after the due date thereof. But this suit having been instituted four years, eight months and four days after the date on which the ninth installment became due served to toll the statute of limitations as to that and the last installment. It follows, therefore, that any claim for personal liability in this case is necessarily confined to the ninth and tenth installments in the total amount of $207.16, with interest from due dates.

This brings us to the real issue in the case: Was the trial chancellor warranted in decreeing, as he did, that neither the plaintiff, G. T. Fogle & Company, nor the defendant, C. B. Early, the owner of the assessments on the cross street, should have a personal decree against the defendant King for any amount, and that defendant should have paid to him the proceeds of the sale of the real estate decreed to be sold in amounts over and above the payment of the costs of the suit, and the payment and satisfaction of the liens of plaintiff and the defendant Early? This question should be answered in the light of Section 85 of the Dunbar Charter (1921), as amended and reenacted by Chapter 29, Acts of Legislature 1925 (Municipal Charters), which provides that the amount

specified in each paving assessment certificate issued thereunder "shall be the personal debt of the property owner and a lien * * * in the hands of the holder thereof upon the lot or part of a lot fronting" on the street sought to be improved. In this jurisdiction such a provision as to the creation of a street assessment lien and a personal charge against the abutting landowners on the street sought to be improved, was held constitutional for the first time in the case of *City of St. Marys v. Locke,* 73 W.Va. 30, 80 S. E. 841, which case has been followed in *Werninger v. Stephenson,* 82 W.Va. 367, 95 S. E. 1035, and *Huntington Engineering Company v. Gallaher,* 101 W.Va. 110, 132 S. E. 866.

It is contended by King that the instant assessment is substantially in excess of the benefits conferred by the improvement, and that the assessment, so far as it is the basis of a personal obligation upon the value of the property after the improvement, is unconstitutional and void. Both the *St. Marys* and the *Huntington Engineering Company* cases are cited to this effect. This Court is committed to the doctrine that underlying the power of a municipality to lay street assessments on abutting property, is the rule that an assessment in substantial excess of the special benefits inuring to the property by reason of the improvements is unconstitutional to the extent of such excess. This Court, citing *Norwood v. Baker,* 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443, said, in the *Huntington Engineering Company* case: "It is equally well settled that an assessment in substantial excess of the benefits conferred by the improvements is, to the extent of such excess, unconstitutional." To the same effect see *City of St. Marys v. Locke, supra; French v. Barber Asphalt Paving Co.,* 181 U. S. 324, 21 S. Ct. 625, 45 L. ed. 879; and *Wagner v. Leser,* 239 U. S. 207, 36 S. Ct. 66, 60 L. ed. 23. So, notwithstanding the fact that the provisions of the Dunbar Charter authorizing special assessments for street improvements are unqualified, such assessment cannot be made and personal liability asserted over the amount derived from a sale of

abutting property in the enforcement of the assessment lien, to the extent which the assessment is in substantial excess of the benefits accruing to the property by reason of the improvements.

In arriving at this conclusion we are not to be understood as deviating in the least from the "front foot" rule in the laying of paving assessments, as provided for expressly in the Dunbar statute. This method of assessment has been held constitutional in *Heavner v. City of Elkins*, 69 W.Va. 255, 71 S. E. 184, affirmed 34 S. Ct. 318, 231 U. S. 743, 58 L. ed. 463, and is still valid in this State.

We are well aware of the criticism widely inveighed against *Norwood v. Baker, supra*, from the time the decision was handed down until the pronouncement of the Supreme Court of the United States in *French v. Barber Asphalt Paving Co., supra.* The *Norwood* case specifically held, as we hold now, that a special assessment which is substantially in excess of the benefits accruing to the property from the improvement, to the extent of such excess, is void. There is, however, language in the *Norwood* opinion which led some courts and parties litigant to think that that case did away with the front foot rule, but the question was set at rest by the two later cases of *French v. Barber Asphalt Paving Co., supra*, and *Wagner v. Leser, supra*. In the *French* case, written by Mr. Justice Shiras, and to which Mr. Justice Harlan, the writer of the opinion in the *Norwood* case, dissented, being joined in said dissent by Mr. Justice White and Mr. Justice McKenna, the Supreme Court of the United States, in a lucid opinion, explanatory of the *Norwood* case, held that the *Norwood* case did not abrogate the "front foot" rule. The interpretation of the *Norwood* case contained in the majority opinion in the *French* case has been adopted by this Court, in *Heavner v. City of Elkins, supra*, syllabus, in the following language:

"An assessment by a city upon lot owners for cost of paving a street is not contrary to Amendment 14 of the National Constitution, or Section 10 of Article 3 of the State Constitution, either because the assessment is by the number of front feet of lots abutting on the street, or because there was no notice of such assessment to the lot owners."

The Court, speaking through Judge Brannon, said at page 257, of the opinion in the *Heavner* case:

"At one time it was a great question whether the assessment could be so made [front foot]. Some state courts held that it could not be, but that the assessment must be measured by the benefits conferred on each lot. *Violett v. Alexandria*, 92 Va. 961. Such was the holding, as commonly construed, of *Norwood v. Baker*, * * *. But in *French v. Barber Asphalt Paving Co.*, * * *, that construction of the *Norwood* case was repudiated. The common construction was that the *Norwood* case condemned such assessment; but if it did, it has been overruled or ignored by the Supreme Court. The well considered case of *French v. Barber Co.*, just cited, holds as follows: 'The apportionment of the entire cost of a street pavement upon the abutting lots according to their frontage, without any preliminary hearing as to the benefits, may be authorized by the legislature, and this will not constitute a taking of property without due process of law.' This case has been followed in *Tonawanda v. Lyon*, 181 U. S. 389; *Cass Farm Co. v. Detroit*, Id. 395; *Webster v. Fargo*, Id. 394; *Chadwick v. Kelley*, 187 U. S. 540; *Davis v. City of Lynchburg*, 84 Va. 861. The Supreme Court has said, 'A system of delusive exactness should not be extracted from the very general language of the Fourteenth Amendment in order to destroy methods of taxation which were well known when the Amendment was adopted, and which no one then supposed would be disturbed.' *L. & N. Ry. Co. v. Barber Asphalt Paving Co.*, 197 U. S. 430. Thus we hold the assessment by the front foot is not an unconstitutional mode of assessment."

So we hold that the provision in the Dunbar Charter that the assessment shall be measured on the front foot basis is constitutional. In so holding we do not deviate from the position that an assessment to the extent that it substantially exceeds the value of the special benefits accruing out of the improvements is unconstitutional. The correct rule, in our opinion, is that although a street assessment may be validly levied on a "front foot" basis, yet, such assessment subsequently may be rendered invalid, in part, because it substantially exceeds the value of the special benefits. In this case the special benefits are necessarily the difference between the value of the abutting property immediately before and immediately after the improvements had been made, but King in his answer takes the position that no special benefits accrued to the property by reason of the improvements. If the allegations of the answer in this regard are true, his position would be tenable, provided he took proper steps to protect himself. With full notice that the street upon which his lot abuts would be paved and with opportunity to protest before the levying body, he made neither appearance nor protest, nor did he prior to the expenditure of money resort to injunctive relief. In silence he permitted the improvements to be made and money expended therefor, and received the benefits therefrom. In *Damron v. City of Huntington,* 82 W.Va. 401, 96 S. E. 53, this Court held that the holder of a deed of trust on lots upon which assessment liens for street improvements had been imposed by public authority cannot complain that the lien is confiscatory, where, as here, with full opportunity to do so, the property owner made no protest to the levying body, and did not ask for injunctive relief, but, nevertheless, received the benefits growing out of the improvements. Under the *Damron* case, it was necessary for King to take two steps, first, a timely protest before the assessment was made; and, second, an application for injunctive relief before the city had altered its position by the expenditure of money. See also *Mortgage Company of Maryland v. Lory,* 109 W.Va. 310, 154 S. E. 136. In *Pardee & Curtin Lumber Co. v. Rose,*

87 W.Va. 484, 488, 105 S. E. 792, this Court said: "The courts and text writers almost uniformly hold that when a statute provides a remedy against excessive, erroneous or improper assessments before some officer or board appointed or elected for that purpose, the party aggrieved must at his peril avail himself of this remedy and cannot resort to the courts in the first instance; and if he neglects to avail himself of the statutory remedy provided, he cannot assail the assessment in a collateral proceeding nor invoke the equitable powers of the courts for redress." The city having the power under its charter to make the assessments and improvements in question, and defendant King not having sought relief in the manner provided for under the charter under which the assessment was made, or, if such protest had been made and overruled, did not avail himself of injunctive relief, he will not be heard to complain except as to that part of the assessment which may be unconstitutional because of excessiveness.

But is King's liability to be limited to the proceeds that may be derived from a forced sale under the court's decree? We think not. As heretofore indicated, plaintiff is not entitled to an amount more than the difference between the value of the property immediately before and immediately after the improvements were made, and because the assessment is valid, plaintiff is, of course, entitled to a decree of sale. Should the property at a forced sale fail to bring an amount equal to or in excess of the actual benefits derived from the paving, a personal decree may be taken against King to the extent of any outstanding installments, to the amount of such deficiency, the collection of which has not been barred by the statute of limitations. As heretofore indicated, all but the last two installments having been barred, such personal liability shall not be in an amount greater than the total of the last two installments, with interest thereon.

However, the question of the value of the property immediately before construction was begun and the value thereof immediately after the improvements were made was not fully developed in the court of common pleas and passed on in that court, and this Court will not attempt to do so now, for it is beyond our appellate jurisdiction, either on writ of error or appeal, to consider, in the first instance, nonjurisdictional questions not fairly arising upon the record. *Nuzum v. Nuzum*, 77 W.Va. 202, 87 S. E. 463; *Alford v. Kanawha & W.Va. R. Co.*, 84 W.Va. 570, 100 S. E. 402; *State v. Huber*, 129 W.Va. 198, 40 S. E. 2d 11, 168 A. L. R. 808.

We think the foregoing disposes of all the questions properly arising on this record and brought to the attention of the Court, with the exception of plaintiff's complaint that the trial chancellor did not consider the alleged fraud and the effect thereof based upon the correspondence between plaintiff, defendant King and S. A. McQuain, which plaintiff brought into this record on the basis of his replication of defendant's answer. It is contended that this correspondence prompted plaintiff to postpone the bringing of this suit, and served to toll the statute of limitations. We do not think, however, that the correspondence had such effect. Code, 55-2-17, provides, among other things, that where defendant obstructs the prosecution of a right to bring suit by indirect ways or means, "the time that such obstruction may have continued shall not be computed as any part of the time within which" suit or action ought to have been brought or instituted. This, however, is not a case of fraudulent concealment of a cause or action, as in *Newberger v. Wells*, 51 W.Va. 624, 638, 42 S. E. 625, or the withholding of deeds from record so that a judgment creditor is unable to proceed as in *Robertson v. Campbell*, 117 W.Va. 576, 186 S. E. 310. Plaintiff here asserts that he had a valid, subsisting street assessment lien against King's property. If his assertion is correct that lien would remain valid and extant, though King had contracted to sell, or had actually conveyed his

property. A mere cursory examination of the records in the County Court Clerk's office of Kanawha County would have informed plaintiff of the status of the title subject to the street assessment lien. The means of inquiry were readily available to plaintiff. It should have availed itself thereof, and having ascertained that King still retained title, as plaintiff contends here, there was nothing to preclude it from immediately instituting action, if it so desired, at the very instant of the first default.

Plaintiff complains that the passage of many years from the time the assessment was made until the present time renders it impossible, or at least extremely difficult to ascertain on remand the difference between the value of the property before and after the improvement was made. If the lapse of time and delay has made this problem increasingly difficult for plaintiff, the difficulty lies at the threshold of plaintiff's door in postponing the institution of proper litigation.

We reverse the decrees of the circuit and common pleas courts and remand the case to the court of common pleas, with directions that it hear evidence and determine the amount of the special benefits inuring to the property by reason of the improvements, and enter a decretal judgment in favor of plaintiff and against defendant King; that the court decree a sale of the property; and, in the event the proceeds received by plaintiff from such sale do not fully reimburse it for the special benefits resulting from the improvements, that the court enter a decretal judgment against defendant for an amount sufficient to satisfy such deficiency but not in excess of the amount of the last two installments, with interest from the respective dates they became due.

*Reversed and remanded with direction.*

Fox, JUDGE, dissenting:

I am in accord with the holding of the majority that

the personal liability of the defendant King is limited to the aggregate of the last two installments of the assessment here involved, falling due on May 1 of the years 1936 and 1937, with interest from the respective due dates thereof. I agree, in principle, with the holding of the majority that an assessment on a lot for paving purposes, in an amount in excess of the benefits which will accrue to the owner thereof from the improvements proposed to be made, is confiscatory and, therefore, unconstitutional. In my opinion, however, a person may, in such cases, by his conduct, be estopped, as in other cases, from availing himself of a remedy or a defense against such an assessment, which in other circumstances would be clearly available. In my opinion the defendant King has, by his own conduct, barred himself from asserting any defense to the plaintiff's claim, so far as that claim is grounded on the assessment lien against the lot involved, and on this position my dissent is based.

It cannot be denied that the defendant King had full and complete notice of the assessment; that having such notice he made no protest, at any time or in any forum, against the assessment so made; and that he stood by and saw the plaintiff expend its materials, its labor, and its money in improving and adding to the value of his own property; and failed to put the plaintiff on notice that any question would be raised as to the legality of the certificates issued by the city to meet the cost of such improvements.

On this point we need not go further than to quote from the majority opinion, in which it is stated: " * * * but King in his answer takes the position that no special benefits accrued to the property by reason of the improvements. If the allegations of the answer in this regard are true, his position would be tenable, provided he took proper steps to protect himself. With full notice that the street upon which his lot abuts would be paved and with opportunity to protest before the levying body,

he made neither appearance nor protest, nor did he prior to the expenditure of money resort to injunctive relief. In silence he permitted the improvement to be made and money expended therefor, and received the benefits therefrom." The Court then cites the cases of *Damron v. City of Huntington,* 82 W.Va. 401, 96 S. E. 53; *Mortgage Co. of Maryland v. Lory,* 109 W.Va. 310, 154 S. E. 136; and *Pardee & Curtin Lumber Co. v. Rose,* 87 W.Va. 484, 105 S. E. 792; and then proceeds with this further statement: "The city having the power under its charter to make the assessment and improvements in question, and defendant King not having sought relief in the manner provided for under the charter under which the assessment was made, or, if such protest had been made and overruled, did not avail himself of injunctive relief, he will not be heard to complain except as to that part of the assessment which may be unconstitutional because of excessiveness."

I find no fault in the quoted statements in the majority opinion, and fully concur therein. My contention is that, in the circumstances so well stated in said opinion, the Court should go further and hold that the defendant King should not now be heard to deny that special benefits accrued to his lot from the work performed, but also, that he is estopped from contesting the payment of the entire amount of the assessment made, to the extent that the same may be recovered by the enforcement of the lien of the assessment by a sale of the lot affected by the improvements made.

My position is based upon the doctrine of equitable estoppel, or estoppel *in pais,* which are now generally understood to mean the same thing. The basic principle of the doctrine is well defined in 19 Am. Jur., 640, wherein it is stated:

> "The doctrine of estoppel in pais is founded upon principles of morality and fair dealing and is intended to subserve the ends of justice. It

always presupposes error on one side and fault or fraud upon the other and some defect of which it would be inequitable for the party against whom the doctrine is asserted to take advantage. It concludes the truth in order to prevent fraud and falsehood and imposes silence on a party only when in conscience and honesty he should not be allowed to speak. Estoppel of this character arises from the conduct of a party, using the word 'conduct' in its broadest meaning as including his spoken words, his positive acts, and his silence when there is a duty to speak, and proceeds on the consideration that the author of a misfortune shall not himself escape the consequences and cast the burden on another. Accordingly, it holds a person to a representation made or a position assumed where otherwise inequitable consequences would result to another who, having the right to do so, under all the circumstances of the case, has in good faith relied thereon and been misled to his injury."

In the same volume of American Jurisprudence, at page 668, it is stated:

"The courts are especially disposed to uphold a claim of estoppel by silence or inaction where one party with full knowledge of the facts has stood by without asserting his rights or raising any objection while the other party, acting on the faith of such apparent acquiescence, incurred large expenditures which will be wholly or partially lost if such rights or objections are subsequently given effect. This principle finds frequent application in respect to improvements and expenditures upon real property under a claim of right and will be further considered in that connection in a subsequent section. No estoppel arises from a party's failure to object until after expenditures have been made, if such failure is due to ignorance as to the intent of the other party to violate his rights."

In the same volume, at page 640, it is stated, speaking of estoppel:

"It may, in proper cases, operate to cut off a right or privilege conferred by statute or even by the Constitution."

And this principle is upheld in 11 Am. Jur., 766, wherein it is stated:

"It is a well recognized rule in constitutional law that estoppel may operate to prevent a party from asserting that an act is unconstitutional, unless the proceedings under the act or what is sought to be accomplished is per se illegal. The acceptance of benefits under the statute generally precludes an attack. Rights may have been secured on conditions preventing the questioning of a law. Thus, where one condition of the granting of a charter to a corporation is its acceptance of a statute, the corporation cannot thereafter question the constitutionality of such statute.

"Estoppel to question the constitutionality of laws applies not only to acts of the legislature, but to ordinances and proceedings of municipal corporations, and may be extended to cases where the proceedings of a municipal corporation are questioned on the ground of the unconstitutionality of the statute under which they are had, as well as to cases where they are attacked on other grounds. * * *."

In *Wilson v. Philadelphia School District* (Pa.), 195 A. 90, 113 A. L. R. 1401, it was stated in the body of the opinion that:

"No principle has become more firmly established in the field of constitutional law than the fact that a person may effectively by acts or omissions waive a constitutional right to the protection of which he would otherwise be entitled, provided the waiver does not run counter to public policy or public morals. This is nothing more than the equitable doctrine of estoppel applied in the realm of constitutional law and is uniformly upheld in cases where the constitutional provision is solely protective of property rights."

There is ample authority in our own cases for the application of the doctrine of estoppel in cases similar to the case at bar. Among such cases, in addition to those cited above, are: *Champe v. Nicholas County Court,* 72 W.Va. 475, 78 S. E. 361; *Young v. Columbia Oil Co.,* 110 W.Va. 364, 158 S E. 678; *N. & W. Ry. Co. v. Perdue,* 40 W.Va. 442, 21 S. E. 755; *Lowther Oil Co. v. Miller-Sibley Oil Co.,* 53 W.Va. 501, 44 S. E. 433. See also *New York Trust Co. v. Watts-Ritter & Company,* 57 F. 2d 1012; *South Penn Oil Co. v. Calf Creek Oil Co.,* 140 F. 507.

It is clear, as the majority opinion holds, that the statute of limitations bars the right of personal recovery against the defendant King, except as to the last two installments of the assessment involved; but, in my opinion, the lien of the assessment against the lot improved is still in full force and effect, and I do not think the conduct of the defendant King in failing to make an objection or protest when he should have done so, and in permitting the expenditure of money by the plaintiff, presumably to the full extent of the amount assessed against his lot, will not permit him to accept the benefits of such improvement, and at the same time repudiate plaintiff's claim.

For this reason I would reverse the decree of the Circuit Court of Kanawha County, and remand the case for further proceedings.

I am authorized to state that Judge Kenna concurs in this dissent.